## AMERICAN BOOK CO. v. GATES.

### (Circuit Court, S. D. Iowa. March 2, 1898.)

### No. 3,610.

LIBEL.—MOTION TO STRIKE OUT.

To publish that a corporation puts in out-of-date school books in frontier or backwoods states, and that "books that are referred to nowadays as a laughingstock by intelligent teachers are foisted upon whole states for a series of years," so relates to its methods in pursuing its business as to be actionable, without allegation of special damages.

This was an action at law by the American Book Company against George A. Gates to recover damages for the publication of a libel in respect to its business methods.

C. S. Jelly and N. T. Guernsey, for plaintiff.
R. M. Haines and George F. Henry, for defendant.

WOOLSON, District Judge. The present hearing relates to a motion to strike out portions of the amended and substituted petition. Argument was had before Hon. O. P. Shiras, judge of the Northern district of Iowa, upon a motion to strike out portions of the original petition. Because of certain suggestions, or rather statements, of his views as announced by Judge Shiras on the argument, leave was given plaintiff to amend petition herein. The motion to strike now under consideration is based on substantially the same grounds as the original motion to strike. The alleged libels for whose publication and circulation plaintiff claims damages are contained in a small pamphlet of 47 pages, bearing the title, "A Foe to American Schools. A Vacation Study," and bearing on the title page, as the name of its author, "George A. Gates, D. D., LL. D., President of Iowa College." The entire pamphlet is attached as an exhibit to the substituted petition. Upon its second page, signed by Fred C. Demorest, apparently as secretary of the Southeastern Iowa Teachers' Association, appears a statement to the effect that the pamphlet was read by President Gates before such association "at a session of the college section," and that such section did "by vote indorse the paper, and heartily approve of the suggestion that it be published." While no answer yet has been filed in this case, I assume, since plaintiff has sought to attach the entire pamphlet as an exhibit to the present petition, that the fact

appearing in such pamphlet in the statement of Secretary Demorest may properly be considered herein, and the pamphlet therefore considered on this hearing as having been read, as a paper, before an association of teachers, and as now given circulation with the same object as that for which it was originally presented, viz. a discussion, by one holding the position of a leading educator of the state, of matters of large public interest, touching more or less vitally the educational interests of the state.

The motion to strike is substantially a demurrer directed to the several parts of the pleading it attacks. For the present hearing it must be taken as conceded that the defendant did publish and circulate the pamphlet. The question to be decided is purely a question of pleading, although underlying it, and included in it, is the important consideration as to the right of plaintiff, and its extent, to maintain an action for libel. The substituted petition, as filed, contained the following prayer for judgment: "That by reason of the said premises and the acts of the defendant, as aforesaid, this plaintiff has been damaged and has suffered damages to its business, business reputation, and credit, *and by loss of profits and receipts from its business,* in the sum of one hundred thousand dollars; wherefore plaintiff claims judgment against said defendant for the sum of one hundred thousand dollars," etc. At the argument on pending motion, by consent plaintiff erased from such prayer the words I have above underlined (viz. "and by loss of profits and receipts from its business"). This erasure was made consistently with the statement of counsel for plaintiff that no claim was intended to be presented in the line of special damages. This point is made clear in plaintiff's brief: "It is conceded by the plaintiff that special damages are not pleaded, and are not intended to be pleaded, by the petition as it stands." Page 2. Again, on pages 58 and 59: "It is not claimed that * * * the amended and substituted petition as it now stands * * * contains any plea of special damages." The contention of plaintiff is given on page 59 of brief as "what we contend is that the libel set out is actionable per se, and that we are not bound to plead special damages, and we concede that we have not pleaded them." This contention is plainly met by that advanced on part of defendant, whose counsel, in the first sentence of their opening brief, state: "Our contention is that a corporation can maintain no action for libel without allegation and proof of special damages, unless the charges are of such character as that the court is satisfied that a direct injury will result to the property and pecuniary interests of the corporation." The petition as it now stands, on pages 2, 5, and 6, in setting out particular portions of the pamphlet, avers, in substantially the same phraseology in each instance, that the defendant falsely, maliciously, etc., published, etc., of plaintiff, "its business, business methods, reputation, and credit," the matters set out, intending thereby to interfere, defame, and injure plaintiff's "business, business methods, reputation, and credit." The allegation as to the damage suffered by plaintiff is above given. While plaintiff has attached as an exhibit to his petition the entire pamphlet, it has nevertheless set out hæc verba or by specific description par-

ticular portions of the pamphlet. In the present state of the pleadings, I must regard the claim of plaintiff as to the language it alleges to be libelous, and on which it bases its claim for damages, as limited to these particularly set out and described portions of the pamphlet. I do not regard that part of the petition wherein the pamphlet as a whole, in its entire 47 pages, is described as libelous, as sufficiently basing claim for damages on any part thereof except said particularly set out and described portions. Where such portion is excerpted out of a sentence or paragraph, of course its immediate surroundings may be considered on present hearing, since plaintiff has exhibited the entire pamphlet.

Returning to the narrow point of contention between counsel as presented in their briefs, I may say that no question is here involved as to whether a corporation, such as petition shows plaintiff to be, may bring an action for libel. That is conceded. Nor is there here involved the question whether a corporation may, in a proper case, allege and maintain an action for special damages arising out of a published libel. It is here conceded that no special damages are alleged or claimed. Nor is there here contention whether a corporation may successfully maintain an action for libel where the character of the goods, the products manufactured, be libelously attacked, or where, as in case of a railroad, its condition as to safety of its passengers is thus attacked, whether such condition relate to condition of roadbed, etc., or to the reckless service, etc.. by its operatives, or, in case of a bank, its solvency or reliability, as to safety to its patrons, as a banking institution, etc. The point plainly, clearly, specially here involved is, are the particular portions of the pamphlet, as set out or specially described, so, as to plaintiff corporation, libelous per se as that, under a general allegation and claim for damages, it may maintain this action therefor? Plaintiff expressly declines to allege or claim any special damages. It attempts no construction of the alleged libelous language, no adaptation and shaping or pointing towards it of such language by innuendo. Whether by apt innuendo the language set out might be sufficient to constitute valid cause of action herein is not here open for consideration, nor whether special damage, if it exists, and was properly alleged and claimed, would cause the language set out herein to support action. The naked point to be decided is, does the language set out, and as in said pamphlet set out, support the present action in favor of the plaintiff corporation? I have attempted plainly to state what is involved in the pending hearing. My time is too heavily pressed with other duties to permit me to enter with any fullness into the reasons which lead me to the conclusions below reached. I cannot see that extended statement thereon would assist in this case. I may state, as applying quite generally to the discussion of the alleged libelous paragraphs, that counsel do not appear to differ on propositions of law so greatly as on the application herein of same. There appears much agreement on the proposition that, as applied to the completed products of a corporation, an action of libel may lie where the character, marketable, wholesome, or the like condition, is disparaged, etc.; and also as to the business of a corporation, bank, railroad, etc., where

the alleged libelous terms attack the safety or reliability of service or of deposits, or otherwise disturb confidence in it so that customers may be thereby driven away or prevented from availing themselves of its services, etc.    So, if it must have a credit,—a borrowing credit, if you please,—to enable it to carry on its business, and this credit is assailed; for in such cases property interests as such may be said to be assailed, and not reputation, character, and the like, as those terms are commonly understood.    In all these propositions counsel agree the corporation may maintain action for libel without alleging or claiming special damages.    It is sought to apply this general argument in favor of plaintiff's contention in this action.    And frequent reference to some phases of this argument are contained in its brief. And therein plaintiff's claim is sought to be maintained on the strength of cases wherein the opinion, in its progress towards the conclusion consistent with the points just above stated, has arguendo stated general propositions which apparently are sufficient to sustain plaintiff's contention, except as they are considered as stated with reference to matters then under consideration.    As an instance of this I may refer to the remark in plaintiff's brief (page 22), referring to the opinion of Judge Lacombe in Ohio & M. Ry. Co. v. Press Pub. Co., 48 Fed. 206, where counsel for plaintiff declare:

"The portion of the opinion which we have italicized states the general rule, applicable alike to natural persons and corporations, that a libel upon the method of transacting one's business is actionable per se, so that it is not necessary to aver special damages."

The opinion shows wherein the alleged libel there affected the railway.    After summarizing the plaintiff's complaint to the effect that plaintiff is a railway engaged as common carrier in transporting goods and passengers, and that its occupation is, therefore, the proper, safe, and business-like maintenance and operation of its railroad, so that it may reasonably discharge its duties as such common carrier, Judge Lacombe says:

"Language which charges the plaintiff with such incapacity or neglect in the conduct of its business that belief in the charges would, as a natural and proximate consequence, induce shippers of goods and passengers to refrain from employing the plaintiff as such common carrier, is actionable without special damage.    The particular language complained of here is the statement in the defendant's newspaper that 'over one-half of the ties in the roadbed [of plaintiff] are rotten, and it is dangerous to run trains very fast.'"

The opinion continues, and plaintiff italicizes same:

"Such a publication is manifestly within the principles above laid down."

In an earlier part of the opinion is contained a statement of these principles (which is also italicized by plaintiff in its brief), viz.:

"A corporation, though an artificial person, may maintain an action for libel; certainly for language concerning it in the trade or occupation which it carries on.    It is elementary law that every legal occupation from which pecuniary benefit may be derived, creates such special susceptibility to injury by language charging unfitness or improper conduct of such occupation; that such language is actionable, without proof of special damage."

To publish that the ties in the roadbed of a railway are so rotten that travel over the same is dangerous to life or limb of those taking

passage over same, or that its engine men or train crews are drunken, or otherwise so unfitted for their duties as that such passage must be attended with such danger, is, according to the view of counsel on both sides of the case, to expose the publisher to an action for libel at the complaint of the corporation. Here, as we must construe Judge Lacombe's opinion, having in mind the issues there presented, is "to charge unfitness or improper conduct of such occupation," for this would be unquestionably "language concerning the trade or occupation which it [the railway] carries on," and using terms which, as applied to such business or occupation, impute to the corporation defects or wrongdoing in the very performance of the business of such corporation. Applying the same principle or idea to the business of plaintiff, we may state that, if defendant published that in the supplying of its books its practice was to supply bad or incompetent books, text-books which failed to properly and safely educate or instill right or correct scientific or other principles to those using them, would be, in like manner as in the cited case, to "charge unfitness or improper conduct of [plaintiff's] occupation." The opinion just cited is, however, far from holding that, if one published that the railway used improper methods in soliciting business,—as, for instance, employed solicitors for business, who paid or offered premiums or used other improper influences to persons from whom they solicited business, or that the road was in a combine, or trust, or the like,—that in such case the publisher was guilty of libel, or that such publication would sustain an action for libel at the complaint of the corporation. In a certain sense, the allegations just suggested relate to the business of the corporation; that is, to its methods in obtaining business. But these do not relate to its methods of carrying on its business. To insist that the holding of Judge Lacombe and the reasoning he adopts include the allegations just suggested is to wrest his language and reasoning away from the matters which were directly in his mind, and to which his argument was directed. As applied to case at bar, every extract which the petition sets out or specifically describes as contained in defendant's pamphlet relates to the soliciting of business. None of them charge that in fulfilling its contracts with schools or school officers, or in the books supplied, there is any "unfitness or improper conduct of [plaintiff's] occupation"; so that the holding of Judge Lacombe, and his arguments leading up to such holding, do not properly apply to the extracts on which is based plaintiff's claim in case at bar. A close examination of the other authorities cited in plaintiff's brief compels the same conclusion as to their attempted application herein. While the statement is correct that, as applied to a corporation, the law of libel is as yet highly formulative, since these latter times are peculiarly the periods when corporative associations have had their beginnings and growth into importance in the mercantile world, yet the law has not as yet progressed, nor does it apparently tend to such progression, as that in matters of mere reputation and general corporate character, as distinguished from the business it carries on, the corporation and the individual person are on a parity in the law of libel. The reasons for this statement largely lie on the surface, and need not be specially

stated. To accuse, in writing, a corporation like that of plaintiff of being in a combine or trust, or that its agents, in soliciting business, buy the favorable action of those who control such desired business, does not necessarily constitute libel. In the absence of allegations of special damages, or of such apt innuendo as to bring the accusation directly within the law of libel, the courts are justified in holding no action lies unless the accusations relate to the goods it supplies, or in the methods used by it in supplying its goods to the customers it has obtained, or the like. It is not here necessary to consider to what degree of bad faith or the like with its customers the accusation must reach, for there is no claim that defendant, in the pamphlet extracts assailed, has charged such bad faith.

Except for the special disclaimer in plaintiff's brief, I should have been inclined to hold one extract in petition as coming within the law of libel as to goods of plaintiff, as I view it. This extract is found on pages 33 and 34 of pamphlet as exhibited with petition, and relates to the quality of goods in which plaintiff deals. In this extract it is declared that the list of books in which plaintiff deals "contains some of the most disgraceful trash. They [plaintiff] have many antiquated books." And, after reference to plaintiff's actions in "putting in these out-of-date books" in "frontier" or "backwoods states," the extract declares that:

"Books that are referred to nowadays as a laughingstock by intelligent teachers are foisted upon whole states for a series of years."

Upon page 71 of plaintiff's brief there is stated:

"In the first place, as we have already seen, no part of the libel complained of here is a disparagement of the plaintiff's goods. Counsel have misconceived the purport of the charge with reference to 'foisting' antiquated, trashy school books onto communities alleged to be controlled by plaintiff. The essence of the charge here is not that the plaintiff does not deal in good books. * * * President Gates does not claim that the books in which this plaintiff deals are not good."

This express construction on the part of plaintiff of the extract to which I last referred may be, and I think must be, accepted by the court, at least as a disclaimer by plaintiff of any claim that the extract is actionable as a libel with regard to the quality of goods in which plaintiff deals. Thus accepting, there remains the question whether this extract so relates to plaintiff's methods in pursuing its business, "charging unfitness or improper conduct of [its] occupation," as that the extract, without allegation of special damages, and without innuendo accompanying it, is actionable. I am of the opinion it is actionable. Unless plaintiff's dealings with its customers are fair and honorable in supplying its goods, it must suffer injury wherever such unfairness and dishonorable conduct are known. To charge a mercantile corporation with palming off inferior and comparatively worthless, or worthless, goods whenever it has opportunity to do so, is manifestly to injure it in the business world. A wholesaler or jobber who is charged with imposing inferior, trashy goods upon his customers whenever he can find customers so situated—so under his control—as that they cannot resist such imposition, must suffer material injury in his business if such charge comes to the

knowledge of his general customers, or of those who otherwise might be disposed to trade with him. Plaintiff's business standing—its ability to push its business—would be greatly affected if it were generally believed that it would impose out-of-date, trashy school books whenever it could do so, instead of uniformly dealing in up-to-date, reliable school books. In this respect the corporation is directly affected in its "business, business reputation, and credit" by the extract published. And with my present view of the law, upon proof of publication by defendant of said extract, in the absence of defense thereto (and such is the present status), the matter should properly be submitted to the jury for their verdict as to damages suffered.

With the view herein adopted, I have not deemed it necessary to indicate what ruling would be proper as to those parts of motion to strike which attack different paragraphs of petition, on the ground that those paragraphs purport to relate to agents of the company, and not the company as such. The conclusion follows that defendant's motion to strike must be sustained as to paragraphs thereof 1 to 14, inclusive, and is overruled as to paragraph 15. This leaves remaining of the substituted petition that part commencing with line 5 on page 5 of such petition, and ending with line 21 on same page. (As the petition is not divided into counts and numbered, in this respect apparently not conforming to the requirements of the Code of Iowa, I am unable otherwise to describe the part to which the defendant's motion is overruled.) Let order be entered accordingly; to which action plaintiff and defendant severally except.