8    APPELLATE COURTS OF ILLINOIS.

VOL. 99.] Inland Printer Co. v. Economical Half Tone Supply Co.

---

### Inland Printer Co. et al. v. Economical Half Tone Supply Co.

1. LIBEL—*Charging the Wares of a Manufacturer to be a Humbug.*— A publication charging that the wares of a manufacturer are a humbug, worthless and unfitted for practical use, is a libel.

2. SAME—*Publications Based upon the Examination of a Circular.*—

Inland Printer Co. v. Economical Half Tone Supply Co.

The statements of a publication, based upon the examination of a circular issued by a manufacturing company, commending its wares and not upon an examination of, or experience with such wares, if false and maliciously made, are actionable for any damage resulting.

3.  SAME—*Criticism by the Publishers of Trade Journals.*—The publisher of a trade journal may, without liability, make any fair and reasonable discussion of the wares of a manufacturer who solicits public patronage and may publish an honest expression of his opinion upon the merits of such wares. But, under the guise of expressing an opinion, he is not privileged to maliciously make any false statements of any material fact in relation thereto which will impute to such manufacturer a want of integrity in his business.

4.  SAME—*Truth of a Plea of Justification, a Question for the Jury.*— The truth of matters alleged in a plea of justification for a libel is always a question of fact for the determination of a jury.

5.  CROSS-EXAMINATION—*Of Expert Witnesses.*—Greater latitude is allowed in the going outside of facts in evidence, for the purpose of cross-examining an expert witness, than is allowed in the examination of other witnesses, and the extent of such latitude is a matter resting largely in the sound discretion of the trial judge.

6.  WITNESSES—*Must Not Usurp the Province of the Jury.*—The examination of a witness which permits him to usurp the functions of the jury, to canvass the evidence and to determine the question for which the jury are impaneled, in a case where the evidence is conflicting and where the damages assessed are large, is reversible error.

: **Trespass on the Case,** for libel. Appeal from the Superior Court of Cook County; the Hon. FARLIN Q. BALL, Judge, presiding. Heard in this court at the March term, 1901. Reversed and remanded. Opinion filed December 23, 1901.

**Statement.**—This is an action for libel, brought by appellee against appellants.

Appellee is engaged in the manufacture of a device for making what is known as half-tone cuts for printing pictures, produced by photograph. The Inland Printer Company is a corporation engaged in publishing a trade journal known as Inland Printer, circulated among the newspapers of the country. Henry O. Shepard is the president, the principal stockholder and the active manager of the Inland Printer Co. The evidence showed that he was personally responsible for the publication in the Inland Printer of the article complained of and made the basis of this suit. The article is as follows:

10    APPELLATE COURTS OF ILLINOIS.

VOL. 99.] Inland Printer Co. v. Economical Half Tone Supply Co.

" HALF-TONE HUMBUGS.—Several inquiries have been received for an opinion regarding the ' Fantastical' Half-Tone Supply Company of Baltimore, Maryland. This concern offers for $25 a complete half-tone outfit, including material and instructions so that a boy of fifteen can make half-tones at a cost much less than others can buy the copper on which to engrave them. Here is just one of the propositions of this concern : In the elaborate circulars with which they have flooded the newspapers, they show some single column half-tone proofs. The cost of materials for engraving these single column half-tones, they claim, is but three cents; they offer them to those receiving their circulars at fifty cents, ' one-fifth the regular price' charged for such work. In brief, this concern offers to sell for fifty cents half-tones which cost them, for material, only three cents, and for which other photo-engravers charge $2.50. Just think of the possibilities of money-making here. All this Baltimore company need do is to establish one of their $25 outfits in each of the principal cities and they could soon control the half-tone engraving of the country, up to 4x5 inches in size. Greater wealth than that of the Klondike would be theirs in time. But with a philanthropy as commendable as it is rare, this company offers any one an opportunity to make a fortune. From one of their letters at hand they agree to send their complete outfit, materials and instructions, on receipt of five dollars, and for two dollars they will supply enough materials to keep your photo-engraving establishment running two weeks. According to their circulars, a boy of fifteen can make six 3½ by 4½ half-tones in three hours, or eighteen per day. In two weeks he would make 252 half-tones containing 15¾ square inches each, which, according to their circular, he can get eighteen cents per square inch for, or $714.42 in two weeks on an investment of seven dollars. This scheme leaves no field for the ' gold brick' or ' green goods' people. It also injures the business of the concerns, who advertise a complete printing outfit, ' Every man his own printer,' for $1.50, or the easy-running dynamo for one dollar. It should be hardly necessary to warn people against these concerns, but they are likely to do business while that saying of the experienced P. T. Barnum holds true, that ' There is a fool born every minute.' "

The *narr.*, in two counts, sets up the foregoing article as a false, malicious and libelous publication. One of the pleas filed by appellant avers:

Inland Printer Co. v. Economical Half Tone Supply Co.

" That the Inland Printer is published in the interests of those engaged in the printing business and all that relates thereto; that in the year 1898 the plaintiff distributed circulars setting forth, as follows :

(*a*)   That half-tone making is a secret process, and gave a rough summary of its process.

(*b*)   That with a day or so practice, in accordance with printed directions, any young person of moderate intelligence, for instance, a bright boy of fifteen, could learn to make half-tones as good as sample shown, ' which have a far better printing quality than those formerly used.'

(*c*)   That it would furnish for $25 its entire outfit, the right to use it and the printed instructions, which it designated as ' a simplified and secret method,' so. that one of moderate intelligence, but without experience, could produce in three hours, at a cost for material of about three cents each, six half-tones, such as plaintiff's said circular, taken as a whole, represents to be the latest improvement in half-tones.

(*d*)   That plaintiff's outfit would place one of moderate intelligence, but without experience, on a level footing with any firm engaged in the business of making half-tones.

(*e*)   That plaintiff had perfected an invention which it describes as ' a mechanism to automatically perform the difficult parts of the work, and to put the process within the reach of any one of moderate intelligence.'

(*f*)   That it is the very first means ever offered by which one can make local illustrations of any value whatever to any paper.

(*g*)   That the profit is so large, ' fortunes are being made at it.'

And divers and sundry other untrue and misleading statements and representations.   That plaintiff made such statements and representations knowing them to be untrue and misleading, as in fact they are, with the intent and purpose of inducing the public, by such false and misleading statements, etc., to purchase its said outfit and instructions in the belief that creditable and merchantable half-tones could be easily and cheaply produced (at about one-fifth the usual cost) by persons described by plaintiff, and thus enabled to compete with the regular trade and make large profits.   (Copies of circulars are then set out in full.)

Wherefore defendants admit publication of article in controversy, and allege it was lawful for them to so publish

12    APPELLATE COURTS OF ILLINOIS.

VOL. 99.] Inland Printer Co. v. Economical Half Tone Supply Co.

it, as they were justified in so doing in the interest of and for the protection of those engaged in the printing business and all that relates thereto; that they published the same with good motives and for justifiable ends; that the said several words therein, and all proper and just intendments therefrom to be deduced, are true in substance and in fact; that the wares offered for sale by plaintiff in said circulars will not, in fact, enable the persons therein named to obtain the results therein promised, and the plaintiff was guilty thereby of false, fraudulent and misleading representations and statements in endeavoring to sell the same."

Another plea avers, in substance, the same facts as set up in plea above noted, except that it states, "and the material and apparatus so made and sold by the plaintiff were humbugs and are worthless and unfitted for practical use in the production of half-tone pictures," etc.

The circular referred to in the alleged libelous article and by the pleas, is in part as follows:

## " A FEW FACTS.

### ILLUSTRATION IS THE LIFE OF JOURNALISM.

The latest ·improvement in half-tones now used by the great metropolitan dailies is the form of illustration best adapted to newspapers.

It does away with ALL the previous objections to half-tone for newspaper purposes.

The only drawback now to its general use is the expense of making half-tones, which is higher than ever, owing to the large and expensive mechanical plants used, and the increase in the wage scale obtained by the Process Engraver's Association.

Also, half-tone making is a secret process, hedged about with restrictions (each shop only allowed to teach a very few apprentices) and so intricate and complicated that it takes years to perfect a workman, and then he usually understands only one branch.

It occurred to us that, although these were formidable difficulties to overcome, yet, after an expert had once overcome them, it was very practical for him to construct a mechanism to automatically perform the difficult parts of the work, and so to put the process within the reach of any one of moderate intelligence.

The next thing to accomplish was the making of said mechanism at a low price. It has required long and hard

study to reduce the process to a simple system and mechanism, but finally we have been entirely successful.

We have just perfected the invention and protected our rights, and now for the first time offer the right to use the same.

IT WILL OPEN A NEW ERA IN NEWSPAPER METHODS

Because it is the very first means ever offered by which you can make local illustrations, which are the only illustrations of any value whatever to any paper.

We have exhibited it to numbers, including many newspaper men, and the verdict has invariably been one of outspoken admiration of the results, and of the ease and cheapness of producing them.

We expect to see it in use in every newspaper office in the land.

The invention consists in a camera of novel construction and with certain attachments peculiar to itself.

Also an accompanying outfit of accessory apparatus, and our printed, simplified and secret method of operating the entire combined camera, outfit and process, from the copy to the half-tone ready for the printing press.   Besides, we send, free, material to make work enough to start upon.

\*        \*        \*        \*        \*        \*        \*

Following is a rough summary of the process, so as to give you a general idea of the work you will have to do.

The detailed instructions will be given in the book sent with the outfit, and those instructions cover every point. \*   \*   \*   With a day or so of practice in accordance with our printed directions, any young person of moderate intelligence, for instance, a bright boy of fifteen, can learn to make half-tones as good as those of which we mail you impressions on the specimen sheet inclosed.

These specimens are printed from half-tones made with our invention by a person having no previous practice with it, beyond a day or so of its use.

The cost of making the half-tones is trifling.

See the cost for all material marked below each print on the sample sheet, and notice how cheaply you can illustrate your paper with numerous illustrations;  not merely a few, as now done for economy.

These half-tones have a far better printing quality than those formerly used.

They are nearly twice as deep and open in the grain.

You can make a big profit doing work for your job office or for outside customers.

14    APPELLATE COURTS OF ILLINOIS.

VOL. 99.] Inland Printer Co. v. Economical Half Tone Supply Co.

* * * If you should have a customer and he *really* needs a large half-tone, we will make it for you at a trade rate of 10 cents per square inch, giving you a chance to make the other 8 cents yourself. But on cuts under 4 x 5, we will charge you the full rate, because you can make them yourself, and it is to your interest that you should do so. This puts you on a level footing with any firm, because your customers need not know that you can make only 4 x 5 cuts.

Our terms are, for the entire outfit, the right to use it and our printed instructions, twenty-five dollars.

We ship all orders with sight draft attached to bill of lading. We pay the freight.

We have not room in this circular for testimonials, but will send the same to all who prefer seeing them before ordering.

You will have no trouble in getting copy to illustrate your paper with. Once it is known that you are illustrating, you will be flooded with photographs, drawings, etc., of all sorts of local, attractive stuff, and all you will have to do will be to stick it up in front of the camera.

In these stirring times especially, illustrating takes on a new value and opens new opportunities. For the job office work, you can make buildings, portraits, reproductions of lithographed letter heads, checks, original designs, catalogue illustrations and the thousand and one things that are always coming into a job office and needing illustration.

And, besides all the profit, it is a beautiful and fascinating art. We have removed the need of dabbling in poisons, which was inseparable from the old process.

If you are not convinced by all we have said, we hope you will put the whole of this communication into the hands of some local photographer, and ask him what he thinks about it. The chances are that he will want to take up the process himself and illustrate your paper for you. At any rate, we are willing to rest our case upon his judgment.

Following is a detailed list of the articles comprising the outfit :

One camera, without patent rigid slide channel, etc.

### SUPPLIES FOR YOUR FUTURE WORK.

We shall be pleased to furnish you with the supplies you will need in the future, and will do so as cheaply and satisfactorily as any others. At the same time we recognize your right to buy where you please, and therefore, in the spirit of fair dealing, we will in our instruction book tell

you where and how to buy all your supplies from firms now regularly supplying the half-tone trade.   We will also tell you the names of the chemicals used and instruct you how to mix them, and where to buy them.

As far as possible we have only mailed circulars to one paper in each town or county, so you, being probably the only one in your neighborhood to whom our process is sent, will have the advantage over your rival publisher.

We inclose a blank order upon us for one of our outfits. Should you decide to purchase, please fill same out and mail to us and your order shall have prompt attention.

Yours truly,

Economical Half Tone Supply Company,

9 East Lexington Street,

Baltimore, Maryland."

The evidence showed that the business of the appellee during the two months preceding the publication amounted to twenty-six sales of the apparatus advertised in the circular, at a profit;  and that in the twenty-three months after the publication but twenty-four were sold.

The manager of the appellee company was asked if he knew of any reason except the libelous article in the Inland Printer to which to assign the fact that since the publication so few sales had been made.   To which question, over objection of appellant, the witness was permitted to answer, "I do not."   To this ruling of the court appellant preserved its exception.   Witnesses called as experts testified that the prints made by appellee's device were not "acceptable."   In cross-examination, prints in half-tone used in copies of Chicago daily papers were shown to the witnesses and they were asked if such prints were, in their opinion, acceptable.   The prints thus used were admitted in evidence.   The appellant objected thereto and perserved exception.   Much evidence was presented upon the truth or falsity of the various representations made by the circular issued by appellee.

The *narr.* charged special damage in the loss of one customer named.   Appellant objected to evidence of a general falling off in appellee's sales, upon the ground that no other specific instances of loss were alleged in the *narr.* save the one.

16    APPELLATE COURTS OF ILLINOIS.

VOL. 99.] Inland Printer Co. v. Economical Half Tone Supply Co.

The court overruled this objection and appellant excepted to the ruling.

Upon the trial the issues were submitted to a jury and a verdict was returned finding the appellant guilty and assessing appellee's damages at $5,000.

From judgment thereon this appeal is prosecuted.

JAMES HIBBEN, attorney for appellants.

RITCHIE, ESHER & KNOBEL, attorneys for appellee.

MR. JUSTICE SEARS delivered the opinion of the court.

It is contended by appellant that " the verdict and judgment are contrary to and not supported by the evidence or law," and upon this ground, among others, it is urged that the judgment should be reversed. To this contention we can not assent. The alleged libel charges, and the pleas of justification reiterate, in effect, that the appellee's wares are " a humbug " and are worthless and unfitted for practical use in the production of half-tone pictures. These statements of the publication were based upon an examination of a circular issued by the appellee commending its wares, and not upon examination of or experience with the apparatus offered for sale. If the statements are false and were maliciously made, a cause of action exists for any damage resulting.

The publisher of a trade journal may doubtless make any fair and reasonable discussion of the wares of a merchant or manufacturer who solicits public patronage, and may publish an honest expression of opinion upon the merits of such wares. But, under the guise of expressing an opinion upon such wares, a publisher is not privileged to maliciously make any false statement of any material fact in relation to said wares; nor to maliciously make any false statement of fact which shall impute to such merchant or manufacturer a want of integrity in his business.

The issue of fact presented in this cause was as to whether the statements of the publication were false. That the appellants were responsible for the publication, that if

false it was also malicious, and that some damage resulted, could hardly be considered as controverted in this record. Appellants pleaded the truth of the statements in justification of them.    The question of fact presented was as to the sufficiency of the evidence to support such plea.    This was a question for the jury, and we can not say that upon the evidence they might not have properly found, as they did, that the statements were in substance false.    Appellants attempted to support their plea by proving that certain of the representations made by the circular were false.    This, we think, they had a right to do.    The publication was based upon an examination and criticism of the circular. The plea sets up the circular as false in justification.    An issue was formed on replication to this plea.    Therefore it was competent to show that the various statements of the circular were false.    In this behalf, appellant undertook to establish that the process of half-tone making was not a secret process; that the process adopted by appellee did not operate automatically, and did not dispense with the use of poisons; that the process was not invented by appellee's employe and agent, but was known long before this device was put upon the market, and had been described in books upon the subject; and that the representation to the effect that an inexperienced person could make half-tone cuts of commercial value by use of the device, was a false representation.    But while this line of evidence was competent, yet the establishing of the falsity of any one or more of these various representations of the circular will not of itself and as a matter of law be conclusive against a recovery by appellee.    The publication and the plea of justification go beyond the mere assertion of the falsity of these various statements of the circular.    It is charged that the device is a "humbug" and worthless, unfitted for making half-tone pictures of value, and in effect that appellee is dishonest in the vending of the device.    It was for the jury to determine from all the evidence whether the plea was sustained, *i. e.*, whether the evidence established that the device was a "humbug," worthless and unfitted for use,

18 APPELLATE COURTS OF ILLINOIS.

VOL. 99.] Inland Printer Co. v. Economical Half Tone Supply Co.

and therefore that the appellee was dishonest in advertising and selling it. The evidence is conflicting, and we can not say that the determination of the jury, as expressed in the verdict, is without support in the evidence.

We are of opinion that there was no error in admitting in evidence the prints in half-tone as contained in the Chicago daily papers, which were exhibited to the witnesses on cross-examination. These witnesses had testified as experts that the prints made by appellee's device were not commercially acceptable. To test their credibility as experts they were asked if the prints in the Chicago papers were, in their opinions, acceptable, and to explain why they were regarded by them as acceptable, while the prints made by appellee's process were not. The prints, having been thus used in cross-examination, were admitted in evidence. We can not say that the court erred in admitting this cross-examination. Greater latitude is allowed in the going outside of facts in evidence for the purpose of cross-examining experts than is allowed in the examination of other witnesses, and the extent of such latitude is a matter resting largely on the sound discretion of the trial judge. 2 Jones on Evidence, 391.

We can not say that the learned trial court erred in the extent to which this cross-examination was permitted. We are of the opinion that there was no error in allowing appellee to show loss in the falling off of its sales after the publication. Whether such loss was attributable to the publication was for the jury to determine from all the evidence. If it had been attempted to show the loss of specific customers, and such loss was not alleged specially in the declaration, the ground of objection urged by counsel would be good. But such objection does not apply to proving a general decrease of the business.

There remains one other question of procedure to be considered, and we consider it as controlling of the appeal. The manager of the appellee company, when testifying for appellee, was asked in relation to the falling off of appellee's sales:

" Do you know of any reason except this libelous article in the Inland Printer to which to assign the fact that since then you have sold so few ?"

This question was objected to by counsel for appellant upon the ground, among others, that it called for the conclusion of the witness. The objection was overruled, to which appellant preserved its exception. The witness answered, " I do not." In this ruling we think there was error. It permitted the witness to usurp the function of the jury, to canvass the evidence and to determine from it all that the only reason for the loss was the libel. The jury might well have rested upon this evidence, given to them as competent, and have based their measurement of the damages thereon, without attempting to determine from all the facts whether the opinion and conclusion of the witness was correct or not. In a case where the evidence is conflicting, and where the damages assessed by the jury are large, we can not disregard this error, or view it as any other than reversible. It is altogether too likely that it influenced the jury to the prejudice of appellant. Having objected to the admission of this evidence, and having preserved an exception to the ruling of the court in overruling the objection, appellant urged this as one of the grounds for a new trial, and now presents it as one of its assignments of error.

For the error thus assigned the judgment is reversed and the cause remanded.

We find no other error in procedure. Reversed and remanded.