# Willfred Coal Company, Plaintiff in Error, v. Fred A. Sapp et al., Defendant in Error.

## Gen. No. 5,995.

1. Libel and Slander, § 88*—*when corporation may sue for libel.* A corporation may sue for a libel reflecting on the management of its trade or business, its credit and its property, without alleging or proving special damages, where the language used is actionable *per se.*

2. Libel and Slander, § 7*—*how words of libelous publication construed.* In order to ascertain the meaning of an alleged libelous newspaper publication, the whole of the article must be construed and read in connection with the headlines, each phrase construed in the light of the entire publication, the words used must be taken in their natural and obvious meaning, and in the sense that fairly belongs to them.

3. Libel and Slander, § 40*—*what charges against corporation libelous per se.* It is libelous *per se* to publish falsely of a coal mining company that it has violated some of the laws requiring the use of safety appliances in its mine; that its miners were not properly protected by safety appliances; that it violated the law by using a boiler for six months without reporting its condition; that by reason of such violations the mine had been closed by a State

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

mine inspector, and a criminal prosecution brought against the president of the company; that the latter could not be found and was a fugitive from justice; that thirty-five miners were thrown out of employment; that one of them had to sue in order to obtain his pay; that the company had been wrecked; that it was not able to meet its pay-rolls, and that no plans had been made for reopening the mine.

Error to the Circuit Court of La Salle county; the Hon. Joe A. Davis, Judge, presiding. Heard in this court at the April term, 1915. Reversed and remanded with directions. Opinion filed June 11, 1915.

**Statement by the Court.** The plaintiff in error, an Illinois corporation, engaged in the business of operating a coal mine and selling the products thereof, brought suit in the Circuit Court of La Salle county against the defendants in error, the editors and proprietors of the Daily Republican-Times, a newspaper published at Ottawa in said county, to recover damages for the publication of an alleged libelous article in said newspaper. An amended declaration was filed to which a general demurrer was sustained. The plaintiff electing to stand by its declaration, judgment in bar was entered against plaintiff, and it has sued out this writ of error to review the action of the trial court.

The amended declaration consists of one count, which, omitting formal parts and matters of inducement relative to the occupation of plaintiff in error and the good opinion of the public which it claims to have enjoyed, is as follows:

"And the said plaintiff, at that time and place (October 15, 1912, at Seneca, La Salle County, Illinois), did a large and lucrative business in mining and selling coal in and at said coal mine, and the plaintiff had many customers with whom it did business and many others who, together with said customers, extended to it confidence and credit, and from its said business as aforesaid, a large profit resulted to the plaintiff. The plaintiff also had and employed as its president and manager one **J. L. Jones,** who is

the same person hereinafter mentioned in said libel, by said name, and the said J. L. Jones, as president and manager of said plaintiff, had and enjoyed among the said customers of said plaintiff a good reputation for honesty and fair dealing and skilful management of the business of said plaintiff, and the said confidence and esteem in which the said Jones was held by the said customers of the plaintiff increased and extended and maintained the business of the said plaintiff, as aforesaid, and thereby greatly increased the profit which said plaintiff derived from the said business, and thereby greatly increased the value of the property which the said plaintiff used in and about its said business; yet, the defendants, well knowing the premises, but wickedly and maliciously intending to injure the plaintiff in its said business, and to bring it into public scandal and disgrace, to wit: on or about the 15th day of October, A. D. 1912, in, to wit: the City of Ottawa, County of La Salle and State of Illinois, wickedly and maliciously did compose and publish and caused to be composed and published of and concerning plaintiff, in a certain newspaper called the Daily Republican-Times, whereof the defendants were then and there the editors and proprietors, a certain false, scandalous, malicious and defamatory libel containing the false, scandalous, malicious, defamatory and libelous matter following, of and concerning the plaintiff, that is to say:

'Sheriff in hunt of Coal Co. head—Willfred Mine at Seneca closed by Inspector—President Skips—Information Filed against J. L. Jones. State Inspector charges the miners were not properly protected by safety appliances—Miner starts suit for wages—Miners out of Employment.

'The Willfred Coal Mine, at Seneca (meaning the mine of the plaintiff) was closed Monday by Hector McAllister, of Streator, state mine inspector, on the ground that the men employed at the mines were not

properly protected. The sheriff of the county is in search of J. L. Jones, the president of the company (meaning plaintiff). Jones has been made defendant in a criminal suit started in the County Court by State's Attorney C. S. Cullen, in which Jones (meaning the president of the plaintiff) is charged with operating his mine without proper boiler inspection. The information was filed by the State's Attorney September 27th, and the papers have been in the sheriff's hands since that time, but Jones (meaning the president of the plaintiff) cannot be located. Deputy Sheriff Rasmus Benson was in Seneca Monday looking for the coal company (meaning plaintiff) president, but he was not to be found. It is said Jones is in hiding in Chicago. Jones, it is said, has remained away from Seneca since the information was filed. The business of the company (meaning the plaintiff) has become badly wrecked, and it is said the coal company (meaning the plaintiff) has not been able to meet its (meaning the plaintiff) payroll. Phil Timmins, former employee of the Willfred Coal Co. had trouble collecting the wages which he charges is due him and has brought suit. Timmins claims that on one occasion when he went to Jones (meaning the president of the plaintiff) to collect his wages he was thrown down a flight of stairs, and that on another occasion he was ordered off the sidewalk by Jones (meaning the president of the plaintiff). The information filed against Jones (meaning the president of the plaintiff) with Hector McAllister as prosecuting witness, represents that the Willfred Coal Co. (meaning the plaintiff) used a boiler at its mine for a period of more than six months without making a report on its condition. After McAllister had taken up the boiler matter he made a close examination of the mine and directed that it be closed until the proper safety appliances are installed. The thirty-five men employed at the mine are now out of work. At the office of the coal company this afternoon it was

announced that no definite plans had been made for reopening the mine (meaning the mine of the plaintiff.)'

By means of the committing of which said grievances by the defendants the plaintiff has been and is greatly injured in its good name, reputation, credit, trade and business and has fallen into great discredit among its creditors and other worthy persons with whom it had dealings and in its said trade and business, which business was that of operating a coal mine and selling the product thereof and purchasing supplies, labor and material in the operation of said mine; insomuch that those creditors and other persons wholly on account of the publishing and distribution of the said false, scandalous, malicious and defamatory libel by the said defendants, as aforesaid, have altogether refused to sell and refused to buy of or sell to or have anything to do with the plaintiff in its trade and business aforesaid. And the plaintiff has been and is greatly injured also in its reputation, trade and business, because of the said false, scandalous, malicious, and defamatory libel by the said defendants, as aforesaid, of the reputation of the plaintiff's president and manager, said J. L. Jones, as aforesaid. And also by means of the premises the plaintiff has been brought into public scandal and disgrace and has been and is shunned and avoided by divers persons and has been and is thereby injured; to the damage of the plaintiff in the sum of twenty thousand dollars ($20,000.00), and therefore this suit is brought.''

ABRAHAM E. MABIE and I. I. HANNA, for plaintiff in error.

McDOUGALL & CHAPMAN, for defendants in error.

MR. JUSTICE DIBELL delivered the opinion of the court.

It is contended by defendants in error that the declaration fails to allege any special damage resulting in pecuniary loss to plaintiff in error, and that by reason thereof it is fatally defective. The determination of this question depends upon whether the article complained of or any of the statements therein contained are, as applied to the corporation, libelous *per se*. If the article contains statements which are actionable of themselves when applied to the plaintiff corporation and its credit, trade and business, it was unnecessary to allege special damage, and the demurrer should have been overruled. If the words used are not actionable *per se*, it may be necessary to determine whether the allegations of special damage are sufficient.

At common law a corporation may maintain an action for libel affecting its trade or business. *Hahnemannian Life Ins. Co. v. Beebe*, 48 Ill. 87; *Jewelers' Mercantile Agency v. Douglass*, 35 Ill. App. 627; *Inland Printer Co. v. Economical Half Tone Supply Co.*, 99 Ill. App. 8; Newell on Slander and Libel (3rd Ed.) par. 448; 5 Thompson on Corp. (2nd Ed.) sec. 5440; 25 Cyc. 425. In some of the earlier cases, notably in *Trenton Mutual Life & Fire Ins. Co. v. Perrine*, 23 N. J. L. (3 Zab.) 402, decided in 1852, it was held that no words spoken or written of a corporation could be actionable in themselves, and that the corporation must always allege and prove special damage in order to recover. This distinction was thought to be justified by the fact that a corporation has not, like an individual, any character or reputation to be affected by the libel, independent of its trade or business. However, the law is now well settled that a corporation may sue for a libel reflecting on the management of its trade or business, its credit and its property, without alleging or proving special damage, where the language used is actionable *per se*. Newell on Slander and Libel (3rd Ed.) par. 448; 5 Thompson on Corp. (2nd Ed.) sec. 5440; *Ohio & M. Ry. Co. v. Press Pub. Co.*, 48 Fed. 206; *American Book Co. v. Gates*, 85 Fed. 729; *Gross Coal Co. v. Rose*, 126 Wis.

24; *Midland Pub. Co. v. Implement Trade Journal Co.*, 108 Mo. App. 223; *Reporters' Ass'n of America v. Sun Printing & Publishing Ass'n*, 186 N. Y. 437; *Bee Pub. Co. v. World Pub. Co.*, 59 Neb. 713; *Arrow Steamship Co. v. Bennett*, 73 Hun (N. Y.) 81; *Shoe & Leather Bank v. Thompson*, 18 Abb. Pr. (N. Y.) 413; *Union Associated Press v. Heath*, 49 App. Div. (N. Y.) 247; *St. James Military Academy v. Gaiser*, 125 Mo. 517; *South Hetton Coal Co. v. Northeastern News Ass'n.* 1 Q. B. 133. In note to *Brayton v. Cleveland Special Police Co.*, 63 Ohio St. 83, reported in 52 L. R. A. 525, an extensive collection of authorities will be found upon the question here involved.

The cases relied upon by defendants in error, except *Trenton Mut. Life & Fire Ins. Co. v. Perrine, supra,* do not support their contention that it is always necessary for a corporation in an action for libel to allege and prove special damage and pecuniary loss. In *Memphis Tel. Co. v. Cumberland Telephone & Telegraph Co.*, 76 C. C. A. 436, 145 Fed. 904 and in *Reporters' Ass'n of America v. Sun Printing & Publishing Co.*, 186 N. Y. 437, it was held that the words complained of were not actionable *per se,* and the question, whether it would have been necessary to aver special damage had the language been actionable in itself, did not arise. However, in the case last cited, Mr. Justice Gray clearly recognizes the distinction between words actionable *per se* and those not, in pleading special damage. He says:

"There has been some dispute in the cases as to the necessity of setting out the specific damage, which a corporation claims to have suffered from a libelous publication; but I regard the better rule to be that such an averment is not necessary, when the language is of so defamatory a nature as to directly affect credit and to occasion pecuniary injury."

In *American Book Co v. Gates,* 85 Fed. 729, also relied upon by defendants in error, the plaintiff by

leave of court struck out of his complaint all averments with reference to special damage, leaving the same as follows: "That by reason of the said premises and the acts of the defendant, as aforesaid, this plaintiff has been damaged and has suffered damages to its business, business reputation, and credit, * * * in the sum of one hundred thousand dollars." It was held that one statement in the article complained of was libelous *per se,* and that as to such statement the complaint of the plaintiff corporation was sufficient without averment as to special damage. In *Canton Surgical & Dental Chair Co. v. McLain,* 82 Wis. 93, also cited by defendants in error, it was held that the words charged were not actionable *per se,* that they did not necessarily relate to the business of the plaintiff corporation, and that the complaint failed to state facts or circumstances by way of colloquium or otherwise sufficient to enlarge the meaning of the supposed slanderous words. In concluding the opinion, the court says: "Nor does the mere general allegation of special injury in the loss of the sale of chairs supply such deficiency." The question whether it would have been necessary to aver special damage had the words been actionable was not raised or considered. It is also to be observed that if this case could be given the force contended for by defendant in error, it is not in harmony with the later Wisconsin cases heretofore cited. *Hahnemannian Life Ins. Co. v. Beebe,* 48 Ill. 87, does not support the position of defendants in error. In that case a foreign corporation brought suit for an alleged libel, and on demurrer to the declaration it was held that the charter of the plaintiff should have been set out at length, in order that it might be seen whether the publication was false in stating the mode in which it authorized the business to be done, and which was the subject of the criticism which constituted the alleged libel. It was further held that the usual formula in the declaration, to the effect that the defendant falsely and

maliciously wrote and published the article complained
of, was not sufficient under the circumstances of that
case to charge the falsity of the article. The question
whether or not it was necessary to allege special dam-
age apparently was not raised or considered by the
court. That the article there complained of might have
been libelous, if its falsity had been properly pleaded,
is plainly intimated, when the court says:

"If the charter contains no such authority, and the
company does not propose to do its business in this
method, the publication may be libelous. Herein con-
sists the fatal defect in this declaration. It nowhere
purports to set out the charter, either in substance
or *in haec verba.*"

Our attention has been called by defendants in error
to 6 Thompson on Corp. (1st Ed.) sec. 7383, where it
is said: "A Corporation may maintain an action for
libel upon averment and proof of special damages.
This would clearly be true in respect of a slander of its
goods or property." An examination of the last edition
of Thompson, vol. 5, sec. 5440, relating to the same sub-
ject, will disclose that the text of said section 7383 has
been entirely omitted from the later edition, and not
only is the rule there clearly recognized that a corpora-
tion may sue for a libel affecting its business or prop-
erty, but numerous instances are given where it has
been held that the language used was libelous *per se.*
*Trenton Mut. Life & Fire Ins. Co. v. Perrine, supra,* is
the only case cited which tends to support the position
of defendants in error. That decision was rendered in
1852, when there were practically no adjudicated cases
upon the subject, and the case was necessarily one of
first impression. In the *Perrine* case, a libel case, the
declaration of the plaintiff corporation contained
elaborate averments of special damage which were
held sufficient upon demurrer. In the opinion the court
says:

"It may be admitted, without prejudice to the pres-

ent inquiry, that no words spoken or written of a corporation are in themselves actionable, but the corporation must always show special damage in order to recover. And the reason for the distinction may be found in the fact, that a corporation has not, like an individual, any character to be effected by the libel, independent of its trade or business.''

This statement is not in harmony with the holdings in the later cases, nor does it commend itself to us as sound in principle, where the libelous statements pertain to the trade or business of a corporation and are of such a character as to naturally and proximately result in pecuniary injury.

The question whether the article complained of is libelous *per se* will be considered. The imputation of an indictable offense is not essential where the charge is written or printed. *Harkness v. Chicago Daily News Co.* 102 Ill. App. 162; *Dowie v. Priddle,* 116 Ill. App. 184, aff'd 216 Ill. 553. It is well settled that words spoken or written of one in his office, trade, profession or business, which tend to impair his credit, or charge him with fraud or indirect dealings or incapacity, and which tend to injure him in his trade, profession or business, are actionable without proof of special damage. *Clifford v. Cochrane,* 10 Ill. App. 570; *MacDonald v. Lord,* 27 Ill. App. 111; *Gerald v. Inter Ocean Pub. Co.,* 90 Ill. App. 205; *Marion v. Courier Pub. Co.,* 125 Ill. App. 351; *Gross Coal Co. v. Rose,* 126 Wis. 24; Newell on Slander and Libel (3rd Ed.) par. 41. Any written words are libelous which impeach the credit of any merchant or trader by imputing to him bankruptcy, insolvency or even embarrassment, or which impute to him fraud or dishonesty or any mean and dishonorable trickery in the conduct of his business, or which in any other manner are prejudicial to him in the way of his employment or trade. Newell on Slander and Libel (3rd Ed.) par. 47. Words are actionable as libelous if they are fairly susceptible of a meaning defamatory of

the business of the plaintiff. *Harkness v. Chicago Daily News Co.*, 102 Ill. App. 162. A publisher who maliciously makes a false statement of a material fact in relation to the wares of a merchant or manufacturer is guilty of a trade libel. *Inland Printer Co. v. Economical Half Tone Supply Co.*, 99 Ill. App. 8.

The foregoing principles have been applied to libels affecting the credit, trade and business of corporations. Newell on Slander and Libel (3rd Ed.) par. 448. In 5 Thompson on Corp. (2nd Ed.) sec. 5440, it is said:

"A corporation may sue for a libel affecting its business or property, as where, for example, the corporation is engaged in a business which depends upon credit, and a defamatory publication is made which is injurious to its credit. Thus a newspaper article falsely stating that a business corporation is in a precarious condition and cannot meet its financial obligations and that it is about to collapse as a business concern is libelous *per se*. (See *Bee Pub. Co. v. World Pub. Co.*, 59 Neb. 713). So it has been held libelous to charge a corporation engaged in the business of furnishing news to newspapers with tapping the telegraph wires of a rival company for its news. (*Union Associated Press v. Heath*, 49 App. Div. (N. Y.) 247.) So it is libelous to charge a trade journal with being a fake. (*Midland Pub. Co. v. Implement Trade Journal*, 108 Mo. App. 223.) So it has been held that a charge against a street railroad company of keeping two sets of books, one to make settlement with the State auditors, of its license, and one for its stockholders, is a charge involving moral turpitude and comes within the class that is actionable *per se*. (*Cincinnati St. Ry. Co. v. Cincinnati Daily Tribune Co.*, 31 Cinc. L. Bul. (Ohio) 111.) It has been held libelous *per se* to charge that a corporation, engaged in the business of selling coal, at the time of a coal famine, when the people were suffering for fuel, not only asked extortionate prices for its coal but actually refused to sell coal to people suffering from sickness."

In *Gross Coal Co. v. Rose,* 126 Wis. 24, the Supreme Court of Wisconsin, in speaking of the defamatory charge there made, says: "Such a charge is libelous, because imputing mean and abhorrent conduct to the plaintiff in the management of its business, and thus tending necessarily to injure it in such business."

In *Inland Printer Co. v. Economical Half Tone Supply Co.,* 99 Ill. App. 8, it was held that a publication falsely charging that the wares of a manufacturer are a humbug, worthless and unfitted for practical use, is libelous *per se.* In *Ohio & M. Ry. Co. v. Press Pub. Co.* 48 Fed. 206, it was held libelous *per se* to publish of a railroad corporation a statement that "over one half of the ties in the roadbed are rotten, and it is dangerous to run trains very fast;" to publish that a corporation engaged in selling books places out of date school books in frontier or backwoods states; and that "books that are referred to nowadays as a laughing stock by intelligent teachers are foisted upon whole States for a series of years,"—so relates to its methods in pursuing its business as to be actionable, without allegation of special damage. *American Book Co. v. Gates,* 85 Fed. 729. A defamatory publication that a steamship company has been detected in a swindling scheme, and forced to discontinue its business in the place selected, has been held to be libelous *per se. Arrow Steamship Co. v. Bennett,* 73 Hun (N. Y.) 81. In *Shoe & Leather Bank v. Thompson* 18 Abb. Pr. (N. Y.) 413, a banking corporation brought an action for libel for the publication of a statement that there were notes of the bank said to be counterfeits and the officers were in doubt as to which were good, and that divers persons refused to receive the notes of the bank or deal with it, to its damage. It was held that the words were actionable without an averment of special damage. In *St. James Military Academy v. Gaiser,* 125 Mo. 517, the publication referred to an academy where dancing was taught, to the effect

that such institution was harmful to the moral and religious interests of the community, and urging people to absent themselves from the academy as long as dancing was allowed in the building. This was held sufficient to sustain an action for libel. In *South Hetton Coal Co. v. Northeastern News Ass'n*, 1 Q. B. 133, it was said that an action for libel will lie at the suit of an incorporated trading company for a defamatory publication calculated to injure its reputation in the way of its business, without proof of special damage.

In order to ascertain the meaning of a published article the whole of the article must be considered, each phrase must be construed in the light of the entire publication, and the words are to be taken in their natural and obvious meaning and in the sense that fairly belongs to them. The headlines of a newspaper article must also be read in connection with the language which follows. *Marshall v. Chicago Herald Co.*, 185 Ill. App. 226. The words constituting the charge will be construed with their ordinarily accepted meaning. *Sanford v. Gaddis*, 13 Ill. 329; *Nelson v. Borchenius*, 52 Ill. 236; *Miller v. Johnson*, 79 Ill. 58; *Barnes v. Hamon*, 71 Ill. 609. They must be taken in the sense which readers of common and reasonable understanding would ascribe to them, that is, in their ordinary or common acceptation. *People v. Fuller*, 141 Ill. App. 374, aff'd 238 Ill. 116; *Ball v. Evening American Pub. Co.*, 237 Ill. 592; *Ransom v. McCurley*, 140 Ill. 626. The essence of the injury is the effect created by the libel upon the minds of the hearers. *Nelson v. Borchenius*, 52 Ill. 236.

Viewed in the light of the foregoing authorities, the question presented in the case at bar is not difficult of solution. The defamatory statements contained in the article complained of may be divided into two general classes, viz: Those relating directly to the corporation, its business, credit, property and management, and those pertaining to the acts and conduct of its president and manager in the management and control of its cor-

porate affairs. The language complained of with reference to these two general classes of statements is clearly libelous *per se*. Construing the headlines and the body of the article together and taking the words used in their ordinary or common acceptation, that is, in the sense which a reader of common and reasonable understanding would ascribe to them, the imputation is clearly left that the plaintiff corporation in the conduct of its mine had violated some law requiring safety appliances for the protection of its miners; that its miners were not properly protected by safety appliances; that it has violated the law by using a boiler at its mine for a period of more than six months without making a report of its condition; that by reason of such violation of law, a criminal prosecution had been commenced, the mine closed by the State mine inspector, its thirty-five employees thrown out of employment and that no plan had been made for reopening the mine; that the company had become financially embarrassed, or in the language of the article, "the business of the company has become badly wrecked and it is said that the company has not been able to meet its payroll;" that one of its miners had trouble in collecting his wages and that it was necessary for him to sue. It may also be fairly and reasonably inferred from the article complained of that by reason of financial difficulties and the closing of the mine, the plaintiff corporation is no longer a going concern; that it is unable to produce the product of its mine for the purpose of supplying its customers; that it is uncertain when, if ever, it will be able to do so; and that its business has been so managed and conducted in violation of law that its president and manager is now a fugitive from justice. The article in the respects indicated clearly affects the trade, business and property of the plaintiff corporation, and its financial credit and standing, and the reasonable and natural consequence of which will be financial injury. As to such matters, it was unnecessary to allege special damage.

Defendants in error treat the case as though the defamatory statements complained of related solely to the president and manager of the plaintiff in his private or personal capacity. If this were true, their position would be well taken, as held in *Brayton v. Cleveland Special Police Co.* 63 Ohio St. 83, and *Midland Pub. Co. v. Implement Trade Journal Co.,* 108 Mo. App. 223. But here the article complained of not only relates to the corporation itself, and its trade, business and credit, but many of its statements in regard to the president and manager are in direct relation to the trade or business of the corporation and its control and management by him as such officer and manager. In *South Hetten Coal Co. v. Northeastern News Ass'n,* 1 Q. B. 133, it was held that while a corporation may not sue for a libel reflecting upon the members thereof personally, yet it may sue for a libel reflecting on their management of its trade or business, without alleging or proving special damage. In *Riding v. Smith,* L. R. 1 Exch. Div. 91, it was held that a husband might recover damages for defamatory statements regarding his wife (not actionable *per se* as to her) where it appeared that the wife assisted her husband in the conduct of his business, and that the words were spoken of her in relation to the business, in consequence of which he was injured in his credit and business. In *Brayton v. Cleveland Special Police Co., supra,* the court said:

"Although a corporation may sue for a slander upon it in the way of its business or trade, it cannot sue for a slander upon one of its stockholders or officers, if the slander be not in direct relation to the trade or business of the corporation, because the right of action is personal, and is confined strictly to the person of whom the slanderous language was uttered."

It has been held that partners may sue jointly for defamatory words spoken of them in the way of their trade, business or profession, but that no damage can

be allowed for words published of a partner as an individual, unless it appears that the injury to individual character affected the business of the firm.   25 Cyc. 426.

The judgment will be reversed and the cause remanded with directions to overrule the demurrer to the amended declaration.

*Reversed and remanded with directions.*