GEORGE R. LUNN, Respondent, *v.* LUCIUS N. LITTAUER and Others, Appellants, Impleaded with ED. C. DECKER, Defendant.

Third Department, May 7, 1919.

Libel — newspaper article charging Representative in Congress with lack of patriotism and disloyalty — language libelous per se.

A newspaper article, charging that business men who circulated the petition for the nomination of a Representative in Congress sought to gain " big money " through his supposed influence in procuring shipping for their own products in disregard of the rights of the nation, and describing

the conduct as " an unpatriotic endeavor unworthy of loyal American business men and particularly reprehensible on the part of a member of our country's war Congress " and holding out said member of Congress as a " profiteer " or the tool of " profiteers " is libelous *per se,* especially when taken in connection with the fact that the country was at war, and in urgent need of shipping.

APPEAL by the defendants, Lucius N. Littauer and others, from an order of the Supreme Court, made at the Clinton Special Term and entered in the office of the clerk of the county of Schenectady on the 9th day of January, 1919, overruling a demurrer to the complaint, and also from the interlocutory judgment entered in said clerk's office on the same day pursuant to said order.

*Frank Talbot,* for the appellants.

*Frank Cooper,* for the respondent.

WOODWARD, J.:

The complaint charges that on or about the 22d day of August, 1918, the defendants caused to be prepared, signed and circulated in two public newspapers in Gloversville, N. Y., of and concerning the plaintiff, who is alleged to have been a member of the House of Representatives in the Congress of the United States at the time, the following article:

" Why then has it been possible that Republicans have put forward and signed Lunn's petition for the Republican nomination? The reason is an example of unparalleled selfishness on the part of a few profiteers. The manufacturers, tanners and wool dealers who circulated the petition felt that through the agency of Congressman Lunn they would be able to get, by special favor, permission to transport to the United States, skins and wool, particularly from the Cape of Good Hope, that they might have a chance to make big money in the handling thereof. Ships to-day are demanded for the transport of our gallant boys to the fields of France and to transport the enormous mass of necessary ammunition, food and equipment.

" To try by favor to divert shipping from necessary war uses to carry prohibited skins and wool is an unpatriotic endeavor unworthy of loyal American business men and

particularly reprehensible on the part of a member of our country's war congress. Fortunately, the attempt, even through this supposed influential Democratic agent, failed; it was thwarted by authorities at Washington, who would permit no favoritism to interfere with the high purposes of the war.

" In 1916 Mr. Lunn was elected by a majority of a few hundred votes running on the Democratic ticket; elected because of the disruption of the Republican vote as well as because of his support by sections of the Socialists and other elements, elements with whom, at one time or another, Lunn had been affiliated, among whom are not to be forgotten the I. W. W., with whom he has expressed utmost sympathy and approval."

The complaint, by way of inducement, sets out the fact of the great war and the conditions surrounding shipping, and by innuendo charges that the defendants intended to charge the plaintiff with disloyalty, etc. The defendants on this appeal lay great stress upon the rule that innuendoes in a complaint cannot give the language of the publication a broader application, because it is not the office of an innuendo to graft a meaning upon or to enlarge the matter set forth but to explain the application of the words used; but we are of the opinion that it is not necessary to consider the innuendo; the language used, in connection with the admitted fact that this country was at war, in urgent need of shipping, and with all its energies devoted to this purpose, was clearly libelous *per se*. It charged the plaintiff with being the agent of selfish and designing business men, seeking to gain " big money " through his supposed influence in procuring shipping for their own products in disregard of the rights of the nation. The conduct was described as " an unpatriotic endeavor unworthy of loyal American business men and particularly reprehensible on the part of a member of our country's war congress." Clearly such language, used in the height of war excitement, was intended to expose the plaintiff to contempt, ridicule and disgrace, and this is the essential element of libel — it is libel *per se*. To be held out as a " profiteer," or the tool of " profiteers; " to be charged with lending one's self to the promotion of private interests at the expense of the national

welfare, is to invite the hatred and contempt of people generally. This would be true to a considerable extent in time of public tranquillity; in the presence of an aroused public sentiment, when a mere suspicion of unpatriotic or even neutral attitude was likely to excite the hostility of the unthinking, such a charge could not fail to bring the plaintiff into disgrace and might, in many communities, have invited violence against his person.

The order overruling the demurrer, and the interlocutory judgment entered on such order, are right and should be affirmed, with costs, and with leave to the defendants to answer within twenty days.

Interlocutory judgment and order unanimously affirmed, with costs, with leave to defendants, within twenty days, to answer on payment of costs.