Interstate Optical Company, Appellant, v. Illinois State Society of Optometrists and F. T. Lee, Appellees.

## Gen. No. 31,207.

1. LIBEL AND SLANDER—*business reputation of corporation as subject of actionable libel.* A corporation, as well as an individual, may have a business reputation valuable to it which may be so injured by libel of its business integrity as to warrant damages therefor.

2. LIBEL AND SLANDER—*charge that corporation conducts its business badly and inefficiently as actionable.* Newspaper statements which lead people of ordinary sense to think that a corporation conducts its business badly and inefficiently will support an action for libel against the publisher without alleging special damage.

3. LIBEL AND SLANDER—*when published statements respecting optical company's business methods not mere statements of facts but intrinsically libelous.* Newspaper statements that an optical company's offer to examine 30 persons a day would be obtaining money under false pretenses is not a mere statement of facts from which readers could draw their own conclusions but a libelous statement which ordinary persons would be apt to take at its face.

4. LIBEL AND SLANDER—*effect upon ordinary reader as test of libelous character of published statement.* Whether a newspaper statement is libel is not to be judged by the meaning the publisher had in mind but by the effect upon the ordinary reader of words charging plaintiff with obtaining money under false pretenses.

5. LIBEL AND SLANDER—*when statement of facts supporting accusations no defense in action for libel.* A newspaper's statement of facts in such a way as to support its accusations against another of obtaining money under false pretenses is not the kind of statement from which ordinary readers would draw their own conclusions and is no defense to an action for libel.

6. LIBEL AND SLANDER—*when declaration sufficient to admit proof of libeling corporate methods of doing business.* An optical company's allegations in its declaration for libel that it was "engaged in the furnishing of optical advice and spectacles" is sufficient to bring under the declaration proof of libeling its methods of giving optical advice.

7. LIBEL AND SLANDER—*libelous statement respecting business methods of corporation as actionable without proof of special damage.* Words charging an optical company with being unable to stay in business in a legitimate way, with obtaining money under false pretenses, and with misleading people, directly tends to the injury of plaintiff's business and are actionable libel without proof of special damage.

Appeal by plaintiff from the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1926. Reversed and remanded. Opinion filed April 6, 1927.

BROWN & ALSCHULER, for appellant; JESSE H. BROWN, of counsel.

NICHOLSON, CRANDALL & SNYDER, for appellees; JOHN R. NICHOLSON and JOHN T. CHADWELL, of counsel.

MR. PRESIDING JUSTICE TAYLOR delivered the opinion of the court.

This is a suit for damages for an alleged libel. The issue is precipitated by a second amended declaration and a general demurrer. The trial judge sustained the demurrer and ordered the plaintiff's suit dismissed. This is an appeal from that order.

The declaration alleged, among other things, that the plaintiff was an Illinois corporation engaged in the furnishing of optical advice and spectacles, and had a good name and reputation in this State; that the defendants maliciously intending to injure the plaintiff and its business, and to bring it into public scandal and disgrace, on July 20, 1924, in Chicago, composed and published, of and concerning the plaintiff and its business, in newspapers called the Illinois State Society of Optometrists and the Chicago Optometric Society, of which the defendants were the editors and proprietors, a certain false, malicious and defamatory libel concerning the plaintiff and its business.

The words of the libel, as charged in the declaration, are as follows:

"The Interstate Optical Company (meaning the plaintiff) still seems to be unable to stay in business in a legitimate way.

"Word came to the paper this week that the Interstate people (meaning the plaintiff) are still trying to give their (meaning the plaintiff) services and almost give glasses away also. They (meaning the plaintiff) approached the Hart, Schaffner & Marx Clothing Company with a proposition to examine all their employees' eyes (to average about thirty a day) free of charge and to furnish all kinds of glasses where they (meaning the plaintiff) thought them needed, at a flat rate of $7.00 per pair.

"We (meaning the defendants) have no objection to Mr. Larson (the President and duly authorized agent of the plaintiff) doing commercial work if he (meaning said Larson) chooses, any more than any one else, but we (meaning the defendants) do object to any so-called optometrist (meaning the plaintiff) cheapening the profession of optometry to the extent of what would be for a legitimate optometrist, working for nothing. Of course, as the Interstate (meaning the plaintiff) is supposed to be a wholesale house,

Interstate Optical Co. v. Illinois Soc. of Optometrists, 244 Ill. App. 158.

they (meaning the plaintiff) can sell glasses at the wholesale price and make a profit, but if optometrists and oculists would not patronize such a house (meaning the plaintiff) they (meaning the plaintiff) could not continue to be a wholesale house very long.

"If you are patronizing this house (meaning the plaintiff) and do not care for yourself, then have some consideration for the profession of optometry in general and buy your goods where you are at least on the same footing with others.

"No one (meaning the plaintiff) can examine thirty patients a day and know anything about their visual condition in that length of time; they (meaning the plaintiff) are simply getting their money under false pretense and misleading the people they (meaning the plaintiff) examine."

The article seems to be an attack on the plaintiff, based, in part, on the theory that the plaintiff had made a proposition to a clothing company to examine all its employees' eyes (averaging about 30 persons a day) free of charge, and to furnish all kinds of glasses it, the plaintiff, thought were needed, at $7 a pair; that such a proposition to do commercial work would cheapen the profession, and not be legitimate optometry.

Besides that charge, the article suggests that although the plaintiff is supposed to be a wholesale house, and by merely selling glasses at the wholesale price would make a profit, that would be put an end to, if the optometrists and oculists would not patronize it; and that in the interest of the profession of optometry those who are patronizing the plaintiff ought to buy their goods elsewhere; in other words, the plaintiff ought to be boycotted.

It, then, finally states that, as to the proposition presented to the clothing company to examine the employees' eyes (averaging about 30 persons a day) free of charge, no one, not even the plaintiff, could do

that in a day and know anything about the visual condition of the employees; and, further, if such a proposition were accepted, the plaintiff would be getting money under false pretenses and misleading the people they examined.

It is the law that a corporation may have a business reputation which is equally as valuable to it as such reputation would be to a natural person, and that a corporation may be injured in that reputation in the same way as a natural person.

In *Finnish Temperance Soc. Sovittaja v. Finnish Socialistic Pub. Co.*, 238 Mass. 345, the court said: "The conditions of modern society afford ample illustration that 'a very large and important part of the private business of the community is now done under the form of corporations,' and 'the public mischief, the danger to good order and to the peace of the community, arises as well from malicious defamation of private corporations as from libelous attacks on natural persons.'" *State v. Boogher*, 3 Mo. App. 442; *South Hetton Coal Co., Ltd. v. North-Eastern News Ass'n, Ltd.* [1894], 1 Q. B. 138; *Gross Coal Co. v. Rose*, 126 Wis. 24; *Reporters' Ass'n of America v. Sun Printing & Publishing Ass'n*, 186 N. Y. 437.

A corporation not being able to practice a profession, but being entitled to sue for libel, the question arises whether the words in question tend to injure the plaintiff in its trade or business.

Newell (Slander and Libel, 4th Ed. p. 156) says: "words are actionable which directly tend to the prejudice of any one in his office, profession, trade or business. So, if a person carry on any trade recognized by the law, or be engaged in any lawful employment however humble, an action lies for any words which prejudice him in the way of such trade or employment." *MacDonald v. Lord*, 27 Ill. App. 111.

In the *South Hetton Coal Co., Ltd.* case, *supra*, the court said: "Statements may be made in regard to their mode of carrying on business, such as to lead

people of ordinary sense to the opinion that they conduct their business badly and inefficiently. If so, the law will be the same in their case as in that of an individual, and the statement will be libelous.'' In the same case, Lopes, L. J., said: ''I am of the opinion that, although a corporation cannot maintain an action for libel in respect to anything reflecting upon them personally, yet they can maintain an action for a libel reflecting on the management of their trade or business, and this without alleging or proving special damage.   *   *   *   The words complained of must attack the corporation or company in the method of conducting its affairs, must accuse it of fraud or mismanagement, or must attack its financial position.'' That language was approved by the court in the *Finnish Temperance Soc. Sovittaja* case, *supra,* and the following cases cited: *Journal Printing Co. v. Maclean,* 23 Ont. App. 324; *Aldrich v. Press Printing Co.,* 9 Minn. 133, 135, 136; *Reporters' Ass'n of America v. Sun Printing & Publishing Ass'n,* 186 N. Y. 437, 440; *Gross Coal Co. v. Rose,* 126 Wis. 24; *Louisville, Cincinnati & Charleston R. Co. v. Letson,* 2 How. (43 U. S.) 497, 558.

The declaration alleges that the plaintiff ''is engaged in the furnishing of optical advice and spectacles.'' The particular ideas that are intended to be conveyed by the publication, which are chiefly objectionable as obviously charging the plaintiff with fraud and tending to injure its business, are those which mean that the proposition, which the plaintiff made to the clothing company and which involved the examination of the eyes of 30 employees a day, was in part, at least, attended with fraud, as no one could examine the eyes of 30 people a day and know anything about their visual condition in that length of time, and that, therefore, what money the plaintiff might get as a result of that proposition would be obtained by false pretenses and misleading the people they examined.

The reader is not left entirely to a consideration of the facts describing the plaintiff's conduct, from which facts he might make, or would be able to make, inferences and deductions of his own, but he is told categorically that money obtained pursuant to such a proposition, involving the examination of 30 patients' eyes a day, is, and would be, getting money under false pretenses; and it may fairly be said that as the average reader is neither an oculist nor an optometrist, he is apt to take that statement of the publication at its face value. Further, it is the effect of the words used, and not the meaning of the publisher that is important.

In *Cooper v. Illinois Publishing & Printing Co.*, 218 Ill. App. 95, 106, which was a case decided by this court, and was a suit for libel to recover damages for the statement made in the defendant's newspaper that the plaintiff, a judge, was unfit, we said: "It is not as if the article in question had recited what purported to be the trial record of (the plaintiff) and had then proceeded, by way of inference and deduction, to make comment thereon, for in such a case the reader of that publication would then be able himself to make inferences and deductions and so determine whether the comment which was actually published was reasonable. In the article in question the reader is merely presented with what, in effect, is a series of dogmatic statements. He is given no opportunity to weigh and balance; he is told plainly that (the plaintiff) is unfit."

As to the publication in this case, in the first sentence, it is announced that the plaintiff "still seems to be unable to stay in business in a legitimate way," and in the last sentence, "they are simply getting their money under false pretense and misleading the people they examine," and what is said in between, logically and naturally, leads, and is intended so to lead, only to those announcements, and to nothing else.

The intermediate text does not make harmless the charge of doing business in an illegitimate way and getting money by false pretenses. It, rather, states facts tending only in the direction of supporting and justifying them, and showing and emphasizing their truthfulness.

Counsel for the defendants argue that the words, "No one can examine thirty patients a day and know anything about their visual condition in that length of time; they are simply getting their money under false pretense and misleading the people they examine," do not refer to the plaintiff. "They" refers to the antecedent, "the Interstate people," and the latter obviously means "The Interstate Optical Company." Counsel further urge that all of the statements objected to were explained by harmless statements of fact. With that, as we have intimated, we cannot agree. It is also contended that the mere allegations in the declaration that the words were used "of and concerning the plaintiff, and of and concerning the business of the plaintiff," and that the plaintiff was damaged "in its business," were insufficient, unless some allegation was made by innuendo or implication, showing that the plaintiff was in the business of examining eyes. But the declaration stated that the plaintiff was "engaged in the furnishing of optical advice and spectacles," and that, we think, was sufficient.

After a careful analysis of the contents of the publication, we feel bound to hold that the words directly tend to the prejudice and injury of the plaintiff in its trade and business, and are actionable without proof of special damage.

Owing to the error of the trial court in sustaining the demurrer to the declaration, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

O'CONNOR and THOMSON, JJ., concur.