## MAYTAG CO. v. MEADOWS MFG. CO.
### No. 4392.

Circuit Court of Appeals, Seventh Circuit.
Dec. 4, 1930.

Rehearing Denied Jan. 8, 1931.

300

Wallace R. Lane and Edward S. Rogers, both of Chicago, Ill., William L. Patton, of Springfield, Ill., and Ralph M. Snyder, of Chicago, Ill., for appellant.

Hal M. Stone and Chalmer C. Taylor, both of Bloomington, Ill., for appellee.

Before EVANS and PAGE, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

In Maytag Co. v. Meadows Mfg. Co., 35 F.(2d) 403, we affirmed an interlocutory decree of the District court, denying plaintiff's prayer for relief and finding that defendant had sustained the allegations in its answer, praying, as affirmative relief, an injunction enjoining plaintiff from circulating throughout the country false defamatory propaganda concerning defendant, its business and its product; that defendant was entitled to recover from plaintiff because of latter's said wrongful action; and that the cause should be referred to a master to determine such damage. Following that decision, upon reference, the master heard the evidence and made a finding awarding to defendant as damages $500,000. The District court in its final decree approved the report and awarded damages in accordance therewith. The present appeal followed.

Appellant insists that a court of equity is without jurisdiction to grant the relief awarded by the District court, that there is no evidence to sustain an allowance of damages, and that the award, if proper, is grossly excessive.

In the former appeal we found that appellant maintained a sales organization of some eight thousand persons linked together, wherein salesmen, subject to the control and policy of the various managers under whom they worked, devoted their time exclusively to the promotion of sales of appellant's product, calling upon thousands of dealers and prospective customers each day. We further found that appellant, through such organization, caused to be circulated generally many false statements concerning appellee and its product and business. Sales representatives, district and divisional managers, and other representatives of appellant, in meetings, house organs, and letters, made statements that appellant was about to sue appellee for patent infringement though appellant's product was unpatented; that appellee would not be in business long; that appellee was going to be in trouble; that its customers would be unable to get repair parts; that appellee was paying a royalty to appellant; that there was an injunction against appellee; that buyers would have orphan machines on their hands; that appellee's financial backing was weak; that its salesmen were here to-day and gone to-morrow; that appellee had a small factory, was inexperienced, and could not meet its notes, was in the hands of a receiver and had no

credit rating; and that its factory had been closed. These statements quite readily found their way to the ears of dealers and prospective customers all over the country with damaging results, as reference to the opinion in the former case will disclose.

Before the master, appellee contented itself with the offer of evidence previously taken, resulting in the original interlocutory decree and the findings aforesaid, and a rather full disclosure by appellee's representatives and dealers of their efforts to counteract the propaganda complained of and a narrative of the time and effort spent in that respect. Appellant offered no evidence.

Ignoring hearsay evidence as entirely incompetent to prove the original wrong complained of, remembering the competent evidence offered originally to prove the allegations of appellant and the findings referred to, and limiting the new evidence to such part thereof as is competent upon the question of the time and effort spent by appellee in protecting itself from the damaging propaganda and counteracting the same, we are of the opinion that the evidence amply justifies the conclusion that appellee's allegations have been proved and that it has suffered substantial damage.

■ There remains to be considered appellant's contention, first, that the court, sitting in equity, had no jurisdiction to award damages for libel and slander of appellee and its business, and, second, that if the court had such jurisdiction, the award is grossly excessive.

The original bill sought to enjoin appellee from alleged unfair competition. Appellee's prayer for affirmative relief relied upon unfair competition upon the part of appellant in the way of the damaging propaganda aforesaid and sought an injunction against the same and damages. The original decree found that appellee had sustained the allegations of its answer, awarded an injunction as prayed, and ordered that appellee recover of the appellant "all damages which defendant has sustained since May, 1926, to its business and reputation by reason of circulation of reports or propaganda, the circulation of which is here enjoined." To the contention made upon the former appeal, that the injury complained of was cognizable only at law, we replied in the negative and observed that the objection, first made upon appeal, came too late and was not properly assigned as error.

Following the rule that a court of equity, having taken jurisdiction, will do complete justice and retain the case for all purposes, even though such action requires the determination of purely legal rights, it follows that if the particular part of the prayer for relief complained of, even though legal in character, is germane to the issues in the original cause in equity, the court will retain jurisdiction thereof. Thus, in Kinney-Coastal Oil Co. v. Kieffer, 277 U. S. 488, 48 S. Ct. 580, 584, 72 L. Ed. 961, the original bill sought to restrain one of the parties from certain entries and operations under a lease. The court held that the District court had jurisdiction also to determine the damages which plaintiff's entries and operations under the lease caused to the crop of the owner, saying: "It is a general rule that a court of equity, in a suit of which it has and takes cognizance, may administer complete relief between the parties, even though this involves the determination of legal rights which otherwise would not be within the range of its authority." See also Camp v. Boyd, 229 U. S. 530, 33 S. Ct. 785, 57 L. Ed. 1317; Zenith Carburetor Co. v. Stromberg Motor Devices Co. (C. C. A.) 270 F. 424.

In the instant case the original complaint by appellee, in its answer, was based upon allegations of unfair competition upon the part of appellant, viz., the unfair and wrongful propaganda circulated by appellant. That the acts constituting unfair competition amounted to the commission of a tort, the recovery for which was cognizable at law, does not militate against the rule announced by the Supreme court.

Further, it should be observed that Equity Rule 23 (28 USCA § 723) provides that if, in a suit in equity, a matter ordinarily determinable at law arises, such matter shall be determined in that suit according to the principles applicable, without sending the case or question to the law side of the court. Clearly, under this rule, it is the theory of our present system of equitable jurisprudence that the court shall retain all germane parts of the case for its determination, even though some part thereof is legal in character.

■ The question of whether or not appellant would have been entitled to a trial by jury is not before us, for the reason that there was at no time a demand for such a trial. The constitutional right to a jury trial is a mere privilege, and as such, may be waived by any conduct or acquiescence inconsistent with an apparent intention or expectation to insist upon it. Thus, it is well established that a jury trial is waived in civil actions by permitting the court, without any

objection or demand therefor, to proceed to final hearing. United States v. National City Bank of New York (C. C. A.) 281 F. 754; Illinois Surety Co. v. United States (C. C. A.) 229 F. 527; Bank of Columbia v. Okely, 4 Wheat. 235, 4 L. Ed. 559; Campbell v. United States, 224 U. S. 99, 32 S. Ct. 398, 56 L. Ed. 684; Weil v. Federal Life Ins. Co., 264 Ill. 425, 106 N. E. 246, Ann. Cas. 1915D, 974; Washington v. Louisville, etc., R. Co., 136 Ill. 49, 26 N. E. 653. It follows that when this cause was referred to a master to assess the damages, appellant, by proceeding there without demanding a jury trial, waived any right to the same it may have had.

■ In considering the contention that the damages awarded were grossly excessive, it is first wise to observe that the courts recognize libel per se to a corporation and its business. Thus, in American Book Co. v. Gates (C. C.) 85 F. 729, 732, the court says that a corporation "must have a credit,—a borrowing credit, if you please,—to enable it to carry on its business, and this credit is assailed; for in such cases property interests as such may be said to be assailed, and not reputation, character, and the like, as those terms are commonly understood. In all these propositions counsel agree the corporation may maintain action for libel without alleging or claiming special damages." See also Ohio & M. Ry. Co. v. Press Publishing Co. (C. C.) 48 F. 206.

The authorities fully sustain the conclusion that where a libel contains an imputation upon a corporation in respect to its business, its ability to do business, and its methods of doing business, the same becomes libelous per se, and that special damages need not be alleged. The management and credit of a corporation and its solvency are all most carefully guarded by the law, and imputations against the same, imputing lack of credit, insolvency, or pecuniary difficulties are rightfully deemed of such injurious character as to be actionable per se without allegation of special damage. The legal principles constituting the law of libel and slander are the same whether corporations or individuals are involved. See National Refining Co. v. Benzo Gas Motor Fuel Co. (C. C. A.) 20 F.(2d) 763, 55 A. L. R. 406; Vitagraph Co. v. Ford (D. C.) 241 F. 681; Newell on Slander and Libel (4th Ed. 1924) p. 184; Bee Publishing Co. v. World Pub. Co., 59 Neb. 713, 82 N. W. 28; International Text-Book Co. v. Leader Printing Co. (C. C.) 189 F. 86, and Union

Refrigerator Transit Co. v. McClure Co. (C. C.) 146 F. 623.

The evidence before the master consisted of the testimony taken at the original hearing, sustaining the conclusion we arrived at upon the former appeal, that appellant had grossly injured the appellee by its slanderous and libelous statements. We there found that, as a result of this situation, prospective customers hesitated or refused to purchase appellee's machines. They became frightened and demanded security that appellee's machines, if purchased, would not be taken from them. They feared they might be involved in litigation and might not be able to procure parts. Dealers became uneasy and ceased handling appellee's machine because of the fear engendered in their minds; prospective customers were frightened and lost, and complaints from dealers and distributors came to the office of appellee. Appellee was put to great expense in counteracting this propaganda, and in reassuring dealers and customers of the exact status of the litigation and of the relationship between appellant and appellee.

■■ The evidence on the hearing under the reference included, in addition, testimony of appellee's sales representatives, showing the extent to which said propaganda had spread and the amount of time and effort spent by these representatives in attempting to counteract the effect of same. The master awarded $500,000. Appellee did not, and obviously could not, measure its damages by proof of loss of specific sales or general loss of business. Such evidence would necessarily be entirely speculative in character, so far as accurate measurement thereof is concerned. But the failure to show any general loss in business does not necessarily negative actual damage. Again, whether the development of the company, its natural growth, and conditions generally are such as to produce belief that the company would otherwise have grown much more rapidly, is manifestly speculative and argumentative. The master was necessarily confined to a consideration of the libelous propaganda that had been spread, the number of representatives of the appellant actually promoting its sales and the circulation of the unfair statements, evidence of the widespread character of the latter and of the time and effort spent in counteracting same, and all of the circumstances concerning the difficulties which the circulation produced. Without reciting all of these, it is apparent from an examination of the record that the District court was entirely justified in its

conclusion that very substantial damages had accrued to the appellee.

The amount of damages recoverable in such cases as this is, ordinarily, peculiarly a matter for the jury, and where the court sits as a jury the only question arising is whether there has been anything other than the exercise of sound discretion. There can be no fixed or mathematical rule upon the subject. The master was bound to consider the notoriety given to the defamatory charge, the nature of the statements made and the character, condition, and influence of the parties. The damages are general in character, and specific instances of loss are not dependable standards of measurement. The general nature and extent of the business of appellee and its prospective damages, likely to result from the act of the defendant, were material circumstances. In short, the amount of damages lay within the sound discretion of the master, considering all of the circumstances of the case.

However, if the award is so great that it may be reasonably presumed that the master did not exercise such discretion, the court should treat the damages as excessive. We are loath to interfere with the verdict of a jury or the finding of a court, but considering all of the circumstances here, and remembering that appellee is entitled to recover only pecuniary loss, it seems to us that the award is excessive as to any amount in excess of $250,000.

Other errors are assigned, but in view of what we have said they do not merit discussion.

There will be a reduction of the judgment to $250,000 and costs, and the decree, thus modified, will be affirmed. Each party will pay one-half of the costs of this appeal.