L. E. Almon et al., Appellees, v. American Carloading Corporation et al., Appeal of Daniel D. Carmell et al., Appellants.

Gen. No. 41,887.

McSurely, P. J., dissenting.

Heard in the first division of this court for the first district at the October term, 1941. Opinion filed December 22, 1941.

Walter F. Dodd, of Chicago, for appellants.

William B. Esterman and Helen W. Munsert, both of Chicago, for appellees.

Mr. Justice Matchett delivered the opinion of the court.

Appellants are Daniel D. Carmell, attorney for John T. O'Brien, and other officers of Chicago Local Union No. 710 of the International Brotherhood of Teamsters. Defendants seek to reverse an order whereby Carmell

was disqualified from acting as counsel for them. The order was entered pursuant to a written motion of six paragraphs. Respondents moved to strike the motion. The matter was heard on this motion to strike and evidence submitted. The motion to strike was denied, the order of disqualification entered; this appeal followed. A motion to dismiss the appeal has been heretofore denied.

The facts (not in dispute) are that Carmell is retained as attorney for Joint Council No. 25 of the International Brotherhood of Teamsters, etc., affiliated with the American Federation of Labor. He is also retained as local attorney for the American Federation of Labor on a regular retainer basis. His retainer is paid from the general fund of either or both organizations. A majority of plaintiffs are members in good standing of Chicago Local Union No. 710 affiliated with Joint Council No. 25. Plaintiffs, members of the local union, pay dues to it. The union in turn contributes 5 cents per member per month into the treasury of the joint council and 30 cents per member per month into the treasury of the International Brotherhood of Teamsters. All plaintiffs are members in good standing of local unions affiliated with the International Brotherhood and the American Federation. They contributed to the treasury of each.

The written motion asserts (such being the facts) plaintiffs are paying a portion of any retainer paid by either the Joint Council No. 25 or the American Federation of Labor to Attorney Carmell; that Carmell therefore must be considered as representing the interests of all the members of any local union affiliated with Joint Council No. 25 or with the American Federation of Labor. They say he is therefore disqualified from appearing on behalf of a part of the members of these organizations in any proceeding involving a dispute with other members, and that the same disqualification would apply to any other attorney or firm of attorneys

acting with Mr. Carmell as co-counsel or additional counsel for defendant union officials, if such attorney or firm of attorneys occupies a similar position by sharing directly or indirectly in Mr. Carmell's retainer, or by representing the interests of the union in general.

The trial court held it had inherent power to deny any attorney in any cause the right to appear for a litigant if there was a dual representation causing a conflict in positions.

The rule of law in a situation of this kind is simple enough. Neither an attorney nor any other agent can serve two masters. An attorney may not represent conflicting interests. While the rule is simple, its application to particular situations is sometimes difficult. The relation of attorney and client is held sacred in the eye of the law. Not alone while the relationship exists but after it is ended, an attorney may not use knowledge obtained through the relationship of attorney and client to the injury of the former client. A court will not permit a lawyer to disregard his obligation to be loyal to the confidence reposed in him by clients. *People v. Gerold,* 265 Ill. 448; *Strong v. International Building, Loan & Investment Union,* 183 Ill. 97.

The pleadings here disclose that the controversy between the parties came about in this way. The defendant American Carloading Corporation is a Michigan corporation qualified to do business in Illinois and engaged in transporting freight by motor vehicle for hire. Plaintiffs are employed by the company in this business. About December 22, 1940, a dispute arose between the company (plaintiffs and other employees), as to claims for back pay. These claims were finally settled by an agreement between the company and representatives of Chicago Local Union No. 710. The agreement was concurred in by the United States conciliator. An audit of defendant's books made by union officials showed approximately $17,000 back pay shortages. The corporation de-

posited $10,000 in escrow. The men who were on strike returned to work. Paragraph 7 of the agreement required defendant corporation to deliver checks payable to plaintiffs to Chicago Local Union No. 710. Plaintiffs state they are informed and believe that on March 10, 1941, about 160 checks totalling approximately $20,000 were delivered to the union officials. While admitting they are without accurate knowledge, plaintiffs say that if the checks were so delivered, defendant company conspired with the union officials to defeat the purpose of the agreement and delay delivery of the checks by the union officials in order that the same might be returned to the maker corporation at the expiration of 90 days from the respective dates of the checks. A special meeting of all members of Chicago Local Union No. 710 was called for March 16, 1941. It was attended by the union officials and 45 plaintiffs. At this meeting it is said defendants O'Brien and others informed plaintiffs checks for back wages had been received from the Carloading Corporation pursuant to paragraph 7 of the agreement, but that the same would not be delivered to plaintiffs unless and until plaintiffs consented to a deduction of 25 per cent of the amount of the checks. This, it is said, is directly contrary to paragraph 7 of the agreement. Plaintiffs demanded the checks; the union officials refused to deliver them. It is also said defendants told plaintiffs it would be well for them to consent to the deduction; if they refused so to do they would lose their employment or be expelled from the local union or both; if they had regard for themselves and families it were better to consent. Plaintiffs say that the intimidation was to such an extent plaintiffs fear physical violence. The defendant officers of Local No. 710 set up in defense that they have a right to deduct the 25 per cent to be paid into the treasury of the union, in part to meet the expenses of settlement and in part as a fine against plaintiff members of Local

No. 710 for violating the terms of the contract between Local Union No. 710 and the American Carloading Corporation. The president of the joint council instructed Carmell to defend the officers of the local union in these controversies.

The pleadings here disclose that the only defense interposed to this suit is one made by direction of the joint council in behalf of the local union. While defendants are sued personally the defense interposed by them is one which will have the effect of adjudicating the claims of the union. Notwithstanding earlier decisions to the contrary the later and better authorities are to the effect that associations such as the Joint Council No. 25 and Local Union No. 710 have "juristic personalities." (*United Mine Workers v. Coronado Coal Co.*, 259 U. S. 344, annotated in 27 A. L. R. 762; *Franklin Union No. 4 v. People*, 220 Ill. 355, 370–372.) The personality of such an association is invisible. It is, however, given bodily appearance by the officials and others who act in its name. The same thing is true of a corporation. Through the officials the invisible becomes visible, and thereby associations such as these come to have local habitation and a name. Carmell has never sustained the relationship of attorney for these individual plaintiffs. They have not placed confidence in him in that relationship. On the contrary, plaintiffs have voluntarily assented to create new legal entities which, from the standpoint of the law, are distinct from these plaintiffs themselves as any person other than themselves could be. The relationship of attorney and client does not now and never has existed between Carmell and any one of these plaintiffs. The fact that indirectly by contribution plaintiffs have assisted in providing the funds by which the union and the joint council retain Mr. Carmell does not create the relationship of attorney and client nor the obligations arising out of that relationship in so far as these plaintiffs are concerned.

It follows it was error to disqualify Mr. Carmell, and the order will therefore be reversed.

*Reversed.*

O'CONNOR, J., concurs.

MR. PRESIDING JUSTICE MCSURELY, dissenting: In my opinion Daniel D. Carmell, not being a party to the proceedings before Judge DUNNE, and, it not appearing that he would be injured or benefited by the final judgment rendered in the cause, as he has no interest in the suit, is not entitled to appeal from the order disqualifying him from acting as counsel in the trial of the cause. *People ex rel. Yohnka v. Kennedy,* 367 Ill. 256.