## PULLMAN STANDARD CAR MFG. CO. v. LOCAL UNION NO. 2928 OF UNITED STEELWORKERS OF AMERICA et al.

### No. 8739.

Circuit Court of Appeals, Seventh Circuit.

Nov. 28, 1945.

SPARKS, Circuit Judge, dissenting in part.

George B. Christensen and Edward J. Wendrow, both of Chicago, Ill. (Winston, Strawn & Shaw, of Chicago, Ill., of counsel), for appellant.

Earle C. Hurley, John J. Sharon, and John M. Tuohy, all of Chicago, Ill. (Ryan, Condon & Livingston, of Chicago, Ill., of counsel), for appellees.

Before SPARKS, MAJOR, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

This action was brought to recover damages occasioned by the publication of an alleged libel concerning plaintiff in a labor union newspaper. Jurisdiction was based on diversity of citizenship. The union and its officers were made defendants. On motions to dismiss, the court held that the union was not suable in its association name under the law of Illinois, that the language complained of was not libelous per se, and dismissed the case. Plaintiff appeals.

Plaintiff is a corporation engaged in the manufacture of railroad cars and parts. One of its wartime activities has been the

operation of a shipyard in Chicago, where it is engaged in the manufacture of Naval facilities for the United States Navy.

Defendant, the Local Union, is a labor organization within the meaning of the National Labor Relations Act. It has been certified by the National Labor Relations Board as the bargaining agent for the bulk of the employees at the shipyard.

The individual defendants, other than Ken D. Norton and Nancy Norton, are officers or representatives of the local union or of the United Steel Workers of America. Ken D. Norton and Nancy Norton physically printed the newspaper in which appeared the alleged libelous matter.

In December, 1943, and January, 1944, plaintiff caused to be printed a certain advertisement in various newspapers and magazines distributed throughout the United States in which it represented that out of every sales dollar received by it in carrying on its business in 1943, 98.19¢ was paid out in carrying on the operations of the business. This advertisement represented that out of every such dollar, only 1.81¢ represented profit and was subject to possible decrease through renegotiation of its contracts, and subject further to the ultimate liquidation of inventories without loss upon the general termination of war contracts and the expense of reverting to general commercial work.

The complaint charged that on or about February 25, 1944, defendants published in "The Keel," the local union's newspaper, and caused to be distributed to 3,500 employees at the shipyard and to members of the public, the following:

"Pullman, recently you put out a page add in all the city newspapers purporting to show that the company made only a few million dollars profit last year, whereas, everybody knows that your profits actually were over the fifty million dollar mark; that one add in the 'world's greatest newspaper' cost $10,000.00. Over 935,000 papers were printed that day.

"Now Pullman, you claim that there is a shortage of paper, and yet in one newspaper alone, you have wasted more paper at greater cost, than could possibly be used to supply towels to all the toilets and washrooms in the Pullman Empire.

"You are falsifying to the public and also falsifying to the workers, all in the name of Patriotism.

"Why not buy up all the copies of that last add, Pullman, since you are short of paper, and deliver them to the toilets. We can use them there. That is all we think they are worth. We repeat this whole situation has a foul odor, and 'the Keel' promises never to lay down its pens until this condition is remedied."

Plaintiff contends the statements in the publication were wholly false and by reason thereof it has been injured in its reputation, business, credit, and in its relations with its employees, for which it seeks damages.

■ There is no question but that the law of Illinois governs the disposition of this case. Rule 17(b) of the Rules of Civil Procedure for District Courts of the United States, 28 U.S.C.A. following section 723c, expressly provides that: "capacity to sue or be sued shall be determined by the law of the state in which the district court is held; except that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States."

Since no federal right is involved here, we must look to the law of Illinois. The United States Supreme Court in Busby v. Electric Utilities Employees Union, 323 U.S. 72, 65 S.Ct. 142, 183, and in Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, has clearly stated this to be the rule of law.

■ We look to the Illinois cases for guidance. The Supreme Court of Illinois has not dealt with the question of the suability of an unincorporated labor union, but there are numerous Illinois appellate court decisions directly dealing with this question. If the law of Illinois is well settled on the point, we must follow the rule of law, whether the state Supreme Court has passed on the question or not. In West v. American Telephone & Telegraph Co., 311 U.S. 223, 236, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139, 132 A.L.R. 956, the United States Supreme Court said: "A state is not without law save as its highest court has declared it. There are many rules of decision commonly accepted and acted upon by the bar and inferior courts which are nevertheless laws of the state although the highest court of the state has never passed upon them. In those circumstances a federal

court is not free to reject the state rule merely because it has not received the sanction of the highest state court, even though it thinks the rule is unsound in principle or that another is preferable."

The leading Illinois appellate court case is that of Cahill v. Plumbers Etc. Local 93, 238 Ill.App. 123. This case involved a tort action brought against the union for alleged intimidations and threats against a third party to breach his contract with the plaintiff unless the plaintiff adopted the closed shop. The court, referring to 5 Corpus Juris 1369, said approvingly: " 'An unincorporated association cannot, in the absence of statute, be sued in its society or company name, but all the members must be made parties, since such bodies have, in the absence of statute, no legal entity distinct from that of their members. As just intimated, the members may be sued collectively, provided there is a joint liability.' " 7 C.J.S., Associations, § 36.

"The case of O'Connell v. Lamb, 63 Ill. App. 652, involved an action upon a bond, and the court, affirming judgment sustaining a demurrer to the declaration on the ground that the obligee was an unincorporated society, said: "The declaration shows that the obligee named in the bond is an unincorporated society, composed of many persons, of whom a few bring this action at law, on the bond, in their own names for the use of all the members. By the rule at common law this is forbidden. It can be maintained only in the names of all, however numerous. There is no authority, so far as we are advised, for supposing that it has been abrogated or modified in this State * * *."

In Montgomery Ward & 'Co. v. Franklin Union Local No. 4, 323 Ill.App. 590, 56 N.E. 2d 476, 477, the court reached a similar result. In this case the plaintiff sued an unincorporated labor union in an action of tort for damages caused by the delay in printing the plaintiff's catalogue. The court said in part: " * * * We have reached the conclusion that in the absence of a statute, the unions are not suable in their association names. Cahill v. Plumbers, etc.,

Local, 238 Ill.App. 123; Kingsley v. Amalgamated Meat Cutters, etc., 323 Ill.App. 353, 55 N.E.2d 554, 555; Moffat Tunnel v. United States, 289 U.S. 113, 53 S.Ct. 543, 77 L.Ed. 1069; 4 Am.Jur. § 46, p. 485."

The case of Kingsley v. Amalgamated Meat Cutters, supra, was an action in tort for damages due to injuries allegedly caused by the loss of enployment occasioned by defendant's acts. In referring to cases cited by the plaintiff, the appellate court said: " * * * These decisions do not support a right to sue voluntary unincorporated associations at law for damages in Illinois. Plaintiff's suit is in tort for damages and is an action at law, not based upon any statute."

We think these cases clearly show that the common law of Illinois, which has not been changed by statute, does not permit an action at law against an unincorporated labor association.

Plaintiff contends the passage of the National Labor Relations Act, and the certification of this union under that Act, has changed the common law of Illinois in regard to the suability of unincorporated labor unions. We do not agree. Certainly Congress had no such intention in mind when it considered and passed the Act. The declaration of policy in the National Labor Relations Act found in Section 151 of the Act shows clearly the purpose of the Act.[1]

The District Court dismissed the complaint as to the individual defendants on the ground that the words published by the defendants were not libelous per se.

Counsel have argued at great length in their briefs, and we have examined the authorities, as to when a corporation may maintain an action for libel, and as to what constitutes libel per se. It is well settled that a corporation may recover in an action for libel. The proposition is stated in Section 561 of the Restatement of Torts: "(1) One who falsely, and without a privilege to do so, publishes of a corporation for profit matter which tends to prejudice it in the conduct of its trade or business or to

---

[1] 29 U.S.C.A. § 151. "It is hereby declared to be the policy of the United States to eliminate the causes of certain substantial obstructions to the free flow of commerce and to mitigate and eliminate these obstructions when they have occurred by encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection."

**496**

deter third persons from dealing with it, is liable to the corporation under the conditions stated in § 558."

This view has been accepted by the courts. Maytag Co. v. Meadows Mfg. Co., 7 Cir., 45 F.2d 299; Willfred Coal Co. v. Sapp, 193 Ill.App. 400; Finnish Temperance Society v. Publishing 'Co., 238 Mass. 345, 130 N.E. 845; New York Society for the Suppression of Vice v. MacFadden Publications, Inc., 260 N.Y. 167, 183 N.E. 284, 86 A.L.R. 440.

Though the courts have often made a distinction between the "personality" of an individual and a corporation, it is generally recognized that a corporation has a business reputation which is protected by the law. Maytag v. Meadows Mfg. Co., supra; Interstate Optical Co. v. Illinois State Society of Optometrists, 244 Ill.App. 158.

In determining what constitutes libel per se, the courts have often asked: Will the defamatory matter injure the credit, property or business of the corporation? Erick Bowman Remedy Co. v. Jensen Etc., Laboratories, 8 Cir., 17 F.2d 255, 52 A.L.R. 1187; Security Benefit Association v. Daily News Publishing Co., 8 Cir., 299 F. 445; Vitagraph Co. v. Ford, 2 Cir., 241 F. 681. Published defamatory matter attacking one's reputation for honesty and veracity is libelous per se.[2] Washer v. Bank of America, 21 Cal.2d 822, 136 P.2d 297, 155 A.L.R. 1338; Tawney v. Simonson, Whitcomb & Hurley Co., 109 Minn. 341, 124 N.W. 229, 27 L.R.A., N.S., 1035.

The published words complained of here are as follows: "You are falsifying to the public and also falsifying to the workers all in the name of Patriotism."

In the case of Lunn v. Littauer, 187 App. Div. 808, 175 N.Y.S. 657, the New York court held that words reflecting on one's patriotism are libelous per se. While it is true that the plaintiff in that case was an individual, we think that such words are no less libelous when directed against a corporation.

The charge that plaintiff falsified to the public and to its workers facts concerning its earnings constitutes libel per se.

Such charges bring plaintiff into disfavor with the public and with its own employees, and thus tend to injure its business and its business reputation. We cannot agree that such charges were mere expressions of opinion or privileged as fair comment.

The dismissal of the complaint as to the individual defendants is reversed, and as to Local Union No. 2928, it is affirmed. It is so ordered.

MAJOR, Circuit Judge.

I concur in the result reached by Judge KERNER, notwithstanding the persuasive reasoning employed by Judge SPARKS in arriving at an opposite conclusion. If I thought this were an open question, I would join the latter in holding that the instant suit could be maintained against the union. A study of the Illinois cases, however, is convincing that a union is not suable in the courts of Illinois. True, this principle has not been announced by the State Supreme Court, but in my view we are bound by the Appellate 'Court decisions.

Rule 17(b) clearly provides that the capacity to sue or be sued is determinable by the law of the state. The rule was so interpreted in Busby v. Electric Utilities Union, 323 U.S. 72, 65 S.Ct. 142. The fact that the union is recognized or is given the right to be recognized by the National Labor Relations Act and other federal enactments, and thereby endowed with a legal entity, cannot in my judgment be utilized by a federal court in determining the law of the state as to the suability of parties. Notwithstanding such federal legislation, the legislature of a state as well as its courts are free to proclaim such rule as they may see fit. The rule thus proclaimed by the courts of Illinois must be accepted by this court regardless of whether we agree or disagree, and also regardless of any status which the union may assume by reason of federal legislation.

To think otherwise means that Congress by recognizing the legal entity of a union for the purpose of federal legislation may deprive a state of the right to determine who may be sued in its courts. I think it doubtful if Congress could do this by direct legislation, but whether so or not, it should

---

[2] "It is actionable per se to impute to another in libelous form conduct which tends to lower the other's reputation for veracity or honesty, irrespective of whether such conduct constitutes a criminal offense and irrespective of whether it tends to affect the trade, business, or profession of the other, * * *" Restatement of Torts. Section 569, Comment (g).

not be held to have done so by an indirect route.

SPARKS, Circuit Judge., dissenting.

I approve that part of the majority opinion which reverses the ruling of the district court in dismissing the complaint as to the individual defendants. However, I am unable to assent to that part of the opinion which affirms the ruling of the district court in dismissing the complaint as to the Local Union. I think it was error for the district court to so rule.

We agree that the publication was libelous and that a cause of action is stated against the individual defendants. This being true, a cause of action is likewise stated against the Union, if it is capable of being sued. The majority opinion denies such capability under the common law, and as Illinois has adopted the common law, it argues that we are bound by the law of Illinois in the determination of this question.

In 1845, Illinois enacted a statute that "the common law of England, so far as the same is applicable and of a general nature, and all statutes or acts of the British parliament made in aid of, and to supply the defects of the common law * * *, and which are of a general nature and not local to that kingdom, shall be the rule of decision, and shall be considered as of full force until repealed by legislative authority." Illinois Statutes, Chapter 28, section 1.

In my judgment the substance of the original rule of common law was that any unincorporated association, labor union or otherwise, was not recognized as a legal entity apart from its members and for that reason it could neither sue nor be sued in its association name. Gradually various theories of estoppel and waiver were evolved to permit such suits in certain instances. In equity the practice became more liberal and more realistic than at law. (37 Ill.Law Review 70). I find nothing in the common law, or the Illinois law, to prevent any unincorporated association from becoming an entity in any legal manner it may choose, and in my judgment this Union has voluntarily done just that.

In United Mine Workers v. Coronado Coal Co., 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975, 27 A.L.R. 762, the Supreme Court of the United States, before the National Labor Relations Act was enacted, held incorporated trade unions suable, on the ground that they had become legal entities.

Under the National Labor Relations Act, 29 U.S.C.A. sections 151–166, the local union here involved has been certified as exclusive collective bargaining agent. It has voluntarily availed itself of that status through the consent of its membership. It makes leases and contracts in its association name, and it is required to be dealt with as a juristic personality and entity entirely separate and apart from its members. No one here questions the validity of that Act, nor does my contention in any manner conflict with the declaration of policy as expressed by Congress in 29 U.S.C.A. § 151.

The Supreme Court of Illinois has never passed upon such facts as are here pleaded. Hence we must, if possible, ascertain the applicable Illinois law "from all the available data," including the Illinois Appellate Court decisions. West v. American Telephone & Telegraph Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139, 132 A.L.R. 956. None of the Illinois cases purport to pass upon facts such as are here pleaded. This court is not required to follow Appellate Court decisions if they are distinguishable or if this court is "convinced by other persuasive data that the highest court of the state would decide otherwise." West v. American Telephone & Telegraph Co., supra.

The Illinois cases relied upon in the majority opinion are O'Connell v. Lamb, 63 Ill.App. 652; Cahill v. Plumbers, Etc., Local No. 93, 238 Ill.App. 123; Kingsley v. Amalgamated Meat Cutters, 323 Ill.App. 353, 55 N.E.2d 554; and Montgomery Ward & Co. v. Franklin Union, 323 Ill.App. 590, 56 N.E.2d 476. These cases merely adhere to appellees' interpretation of the old common law rule, that an unincorporated association can neither sue nor be sued, which means that such an association can become a legal entity only by incorporation. Other earlier Illinois Appellate cases are quite in conflict with the cases upon which appellees rely. The first two of the cases relied upon were decided many years before the Congressional enactment here involved, and the latter two cases merely cite and follow the first two, and in neither case was the question now before us present, considered or decided, this is to say—can an unincorporated association attain legal en-

tity by means other than incorporation. The Appellate Court of Illinois seems to have passed on this question in 1941, adversely to these defendants' contentions in L. E. Almon v. American Carloading Corp., 312 Ill.App. 225, 38 N.E.2d 362, 364. There the unincorporated labor union was not a party to the action but the pleadings disclosed that the only defense interposed was made by direction of the Joint Council in behalf of the Local Union. While the defendants were sued personally the defense interposed by them was one which would have the effect of adjudicating the claims of that union. The court there said: "Notwithstanding earlier decisions to the contrary the later and better authorities are to the effect that associations such as Joint Council No. 25 and Local Union No. 710 have 'juristic personalities.'" Citing United Mine Workers v. Coronado Coal Co., 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975, 27 A.L.R. 762, annotated in 27 A.L.R. 762; Franklin Union No. 4 v. People, 220 Ill. 355, 370-372, 77 N.E. 176, 4 L.R.A.,N.S., 1001, 110 Am.St.Rep. 218. The writer of the Almon opinion, supra, participated in the Montgomery Ward case, supra, and concurred in its result. The writer of the opinion in the latter case participated and concurred, not merely in the result, but in the opinion in the Almon case, supra.

The factual allegations of this complaint demonstrate that this Union is, and acts, as a juristic entity, and by its motion to dismiss the complaint it has admitted those facts. It may be urged that whether the Labor Union is a juristic entity is a question of law and not of fact, however, it seems to me that such facts are admitted as impel the conclusion of law that the Union is a legal entity. If this be not true then Congress is placed in the unenviable attitude of authorizing a non-entity to carry out the provisions of the Act, which in my judgment would be not only inconceivable, but would render the Act unenforceable, at least in Illinois, for lack of a qualified enforcing agent. We have had numerous cases in this court, under this Act, where various citizens of Illinois have been compelled by court order, much to their sorrow, to deal with a labor union in the manner contemplated by the Act. We know of none who has not regarded such union as a legal entity in a very real sense.

It may also be urged that Congress gave legal entity to this Union for certain purposes only and that such status will not extend beyond those purposes and their accomplishment. Assuming without conceding this to be true, it is clear that the purposes of the Act by which the status was acquired were to secure, by bargain and contract in the name of and by the Union, better wages and better working conditions for its members, so as to avoid any interference with interstate commerce, in which plaintiff is engaged. The accomplishment of such ends would depend largely, if not entirely, upon the employer's income and profits. It is concerning these items that the articles complained of are admitted to have been published by the Union. Whether they state the truth we do not know. That fact can only be determined by a trial court. If they were not true they were libelous, and they were designed to create in the minds of the reading public, including the members of the Union, a harmful opinion of the employer, and a belief that it was not compensating its employees in a manner consistent with its net income. It cannot well be doubted that the object of the publications was to create public sentiment, which, if based on truth, would be a great factor in accomplishing the very purpose of the Act. The Act gave the Union as an entity a plenitude of power to accomplish the purposes honestly and it required the employer to honestly deal with the Union as an entity in the accomplishment of the same purposes. The Union was given the right in its own name to bargain, and contract, and as an entity to enforce such contract in courts of law. To say that either Congress or the Labor Union intended that the employer could not likewise seek relief in a court of law against the same entity for fraudulently accomplishing the purposes of the Act, would be to attribute to them a characteristic which, to say the least, would not be charitable.

This same view is held by the English Courts from whence our Common Law derives. In The Taff Vale Railway Company v. The Amalgamated Society of Railway Servants, 1 British Ruling Cases (Lawyers Cooperative Publishing Co.) 832, the King's Bench Division of the House of Lords, Mr. Justice Farwell presiding, held that an unincorporated trade union, registered under the Trade Union Acts of 1871, and 1876, may be sued in its registered name, because the Legislature in giving the trade union the capacity to own property and to act by agents, without incorporating it, had given

it two of the essential qualities of a corporation "* * * essential, I mean, in respect of liability for tort, for a corporation can only act by its agents, and can only be made to pay by means of its property. The principle on which corporations have been held liable in respect of wrongs committed by its servants or agents in the course of their service and for the benefit of the employer * * * is as applicable to the case of a trade union as to that of a corporation. If the contention of the defendant society were well founded, the Legislature has authorized the creation of numerous bodies of men capable of owning great wealth and of acting by agents with absolutely no responsibility for the wrongs that they may do to other persons by the use of that wealth and the employment of those agents. They would be at liberty * * * to disseminate libels broadcast, * * * and their victims would have nothing to look to for damages but the pockets of the individuals, usually men of small means, who acted as their agents. That this is a consideration that may fairly be taken into account appears from the opinion of the judges given to the House of Lords in the Mersey Docks case. L.R. 1 H.L. 120." Mr. Justice Farwell entered two orders. The first was that plaintiff was legally entitled to sue the Union in tort, the other enjoined the society from continuing the tort. In entering the latter order he used his language: "Therefore, if it is any longer necessary to grant an injunction, I grant an injunction against the defendant society * * *." Damages were not specifically demanded. The prayer was only for an "injunction and such further relief as the court might direct." It is quite evident that the legal principles here announced are as applicable to suits at law as to equitable proceedings, for the predominant question decided is purely legal, and the case was brought into equity only by the nature of the demand.

True this decision is based largely, but not entirely, upon the English Acts of 1871 and 1876, which of course could alter the Common Law so far as England is concerned. However, the opinion states: "The cases having the nearest analogy to the present are those like Ruck v. Williams (1858) 3 Hurlst. & N. 308 * * * and Whitehouse v. Fellows (1861) 10 C.B.N.S. 765, * * * where unincorporated improvement commissioners and the trustees of a turnpike road respectively, sued under their respective acts in the name of their clerk, were held liable in tort." It will be noted that the decisions relied upon were pronounced many years prior to the statutes referred to, and shortly after the Illinois Act. From this I am convinced that the highest English Court, as early as 1858, did not regard the Common Law rule to be that no unincorporated association could attain legal entity, so as to sue or be sued, without first becoming incorporated. The two orders of Justice Farwell were set aside by the Court of Appeal. However, the House of Lords reversed the Court of Appeal and restored the judgments of Justice Farwell.

Aside from this phase of the case I think the plaintiff must prevail. We have no National Common Law, as such. However, our federal courts will apply the Common Law of each state severally where the jurisdiction of such state is affected, providing the Common Law of that State is not inconsistent with the requirements of our Federal Constitution. Illinois having adopted that Constitution will not be permitted to enforce its own law, common or statutory, which is inconsistent with our Constitution or the valid Congressional enactments under it. Constitution Article VI. The Labor Relations Act deals with interstate commerce, and the general welfare of all of our citizens, more particularly with those who labor. Congress clothed this union with much more power than that with which Parliament clothed the Amalgamated Society of Railway Servants, supra, and our Supreme Court has said that they rightfully did so.

In my judgment, the local union here involved, operating, as it is, under present Federal and State laws, is not a naked unincorporated association as that term was originally understood. It is operating under a Federal law which clearly makes it a legal entity (Cf. Moffat Tunnel League v. United States, 289 U.S. 113, 53 S.Ct. 543, 77 L.Ed. 1069), and the Illinois courts are bound to recognize it as such. Constitution of the United States Art. VI; H. J. Heinz Co. v. N. L. R. B., 311 U.S. 514, 61 S.Ct. 320, 85 L.Ed. 309. Illinois courts recognize that duty. Staley v. Illinois Cent. R., 268 Ill. 356, 109 N.E. 342, L.R.A.1916A, 450.

I think the ruling of the district court in sustaining defendants' motions to dismiss the complaint should be reversed.