**GOLDEN PALACE, INC., Plaintiff,**

**v.**

**NATIONAL BROADCASTING CO., INC., Defendant.**

**Civ. A. No. 74–1064.**

United States District Court, District of Columbia.

Nov. 27, 1974.

Robert D. Powell, Washington, D.C., for plaintiff.

Sherman E. Katz, Washington, D.C., for defendant.

## MEMORANDUM OPINION

PARKER, District Judge.

Golden Palace, Inc., a restaurant located in this city, filed a complaint for libel and injurious falsehood in the Superior Court of the District of Columbia on June 11, 1974. The defendant, National Broadcasting Co., Inc. (NBC) duly removed the case to the United States District Court on July 16, 1974, on the ground that plaintiff and defendant are of diverse citizenship and that the amount in controversy exceeds $10,-000 (plaintiff alleged $5,000,000 in damages in the complaint). Golden Palace was granted leave to amend its complaint to allege a third count for negligence. NBC then filed its motion to dismiss, Golden Palace filed a memorandum in opposition, and NBC filed a reply to the opposition. On September 27, 1974, Golden Palace moved for leave

to amend its complaint setting forth certain proposed amendments. NBC filed an opposition to the motion on November 15, 1974.

### Motion to Dismiss

#### Count I—Libel

The complaint alleged that an employee of NBC had broadcast on November 13, 1973 on WRC-TV, the following "false and defamatory" words:

> The faces that once beamed in the Golden Palace dining room on 7th Street can now be seen behind their oriental smiles at the China Garden. The same chef who stirred a flashing chopstick at the Golden Palace now flings the woks around just down from the Bethesda post office. [The review goes on to comment favorably on the food and service at China Garden] . . . Seventh Street's loss is the suburb's gain.

■ These words are not defamatory. Although a corporation may maintain an action for libel, it has no personal reputation and may be libeled only by imputation about its financial soundness or business ethics.

■ Where corporate libel suits have been upheld, the defamation in question has involved the financial integrity or honesty of the company.[1] In this case the above quotation cannot be construed to cast any aspersions upon the business integrity of Golden Palace, but at most it implies that the employees of Golden Palace have left to work at another restaurant.

The United States Court of Appeals for this Circuit held in 1950 that an article which described Washington cab drivers as "ill-mannered, brazen, and contemptuous of their patrons" was not defamatory as to the *owner* of a local cab company. Fowler v. Curtis Publishing Co., 86 U.S.App.D.C. 349, 182 F.2d 377 (1950).[2] Fowler controls the present case, since the review said nothing directly about Golden Palace, but only alleged that some employees had changed jobs. This Count for Libel should be dismissed because the words are not defamatory as to the plaintiff corporation.

#### Count II—Injurious Falsehood

■■ While the review was not defamatory, it might be characterized as disparagement of quality of property, a business tort which is also known as injurious falsehood. This business tort may consist of adverse expression of opinion, and the prerequisites for liability are falsity, special damages and lack of privilege.[3] Plaintiff's interpretation of the review to mean that the "quality of both Plaintiff's cuisine and its service had declined" would thus seem to fairly categorize the review as disparagement rather than defamation. Since no special damages were pleaded in the complaint, however, this Count for Injurious Falsehood should be dismissed.

#### Count III—Negligence

■ Plaintiff alleges in Count III of its complaint that defendant was negligent in broadcasting allegedly false statements regarding plaintiff. This count is not really a separate cause of action but is an attempt to comply with First Amendment doctrine. In the line

---

1. *See*: Aetna Life Ins. Co. v. Mutual Benefit Health & Acc. Ass'n, 82 F.2d 115 (8th Cir. 1936) ; Maytag Co. v. Meadows Mfg. Co., 45 F.2d 299 (7th Cir. 1930), cert. denied, 283 U.S. 843, 51 S.Ct. 489, 75 L.Ed. 1452 (1931) ; Pullman Standard Car Mfg. Co. v. Local Union No. 2928, 152 F.2d 493 (7th Cir. 1945). *See also*: Prosser, Torts (4th ed. 1971) § 111 at 745 ("language which casts an aspersion upon [a corporation's] honesty, credit, efficiency or other business character may be actionable").

2. *See also*: Restatement of Torts § 561(1), Defamation of Corporations, Comment and illustrations ("a corporation is not defamed by communications defamatory of its officers, agents, or stockholders unless they also reflect discredit upon the method of which the corporation conducts its business").

3. *See* Harper and James, The Law of Torts (1956) § 6.1 at 481.

of cases following New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the Supreme Court held that a publisher could not be sued for defamation of public officials or public figures unless it had been guilty of knowing falsehood or reckless disregard for the truth. In the more recent case of Gertz, v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), however, the Supreme Court held that negligence is a sufficient standard of liability in defamation cases where the plaintiff is neither a public official nor a public figure. The question whether plaintiff must prove negligence or reckless disregard for truth need not be reached in this case, and the Count for Negligence should be dismissed, since the words used by defendant cannot be construed as defamatory, and therefore do not give rise to a cause of action.

### Motion for Leave to Amend Complaint

■ Golden Palace's motion for leave to amend its complaint should be denied because the complaint, even with the proposed amendments, fails to state a claim for relief. *See* Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The plaintiff's addition in Count I of an interpretation of the quoted words to mean that its employee have left and therefore that plaintiff's business should be shunned, does not give rise to a proper claim since, as discussed above, a corporation can be defamed only as to its reputation for integrity and not as to the quality of its product. Plaintiff's amendments would also add special damages to all three counts of the complaint for $40,116.44 in lost profits, $34,336.36 for facilities rendered useless, and $4,925,547.20 for damages to plaintiff's reputation. In the *Fowler* case, supra, the Circuit Court clearly stated that special damages must allege:

> ". . . either the loss of particular customers by name, or a general diminution in its business, and extrinsic facts showing that such special damages were the natural and direct result of the false publication. If

the plaintiff desired to predicate its right to recover damages upon general loss of custom, it should have alleged facts showing an established business, the amount of sales for a substantial period preceding the publication, the amount of sales subsequent to the publication, facts showing that such loss in sales were the natural and probable result of such publication . . . . " 182 F.2d at 377, quoting Erick Bowman Remedy Co. v. Jensen Salsbery Laboratories, 17 F.2d 255, 261 (8th Cir. 1927).

In this case, plaintiff's proposed amendments allege damages, specific to the penny, for lost profits and loss of the use of facilities, but fail to allege any facts which show that the damages were a direct result of defendant's statements about plaintiff's restaurant. Thus, the allegations of "special damage" do not meet the standards set forth in the cases, rendering the motion for leave to amend the complaint futile because even the amended complaint fails to state a cause of action upon which relief could be granted.